9 F.3d 1469
 17 Employee Benefits Cas. 1888, Pens. Plan Guide P 23893E
Morris J. TAFT, Plaintiff-Appellee,
v.
The EQUITABLE LIFE ASSURANCE SOCIETY; Equitable Financial
Company and Does 1 through 25, Inclusive,
Defendants-Appellants.
 No. 92-55416.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 7, 1993.
Decided Nov. 30, 1993.
As Amended March 2, 1994.
 
 Royal F. Oakes, Scott J. Therrien, Barger & Wolen, Los Angeles, CA, for defendant-appellant.
 Herbert Davis and Margaret A. Jewett, Los Angeles, CA, for plaintiff-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before: HALL and RYMER, Circuit Judges, FITZGERALD, District Judge.*
 CYNTHIA HOLCOMB HALL, Circuit Judge:
 
 
 1
 The Equitable Life Assurance Society of the United States appeals the district court's judgment in favor of Morris J. Taft. The district court held that Equitable abused its discretion in violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461, by terminating Taft's disability benefits. Because we find that the district court erred at trial by examining evidence that was not part of Equitable's administrative record, we reverse.
 
 I.
 
 2
 The Equitable Life Assurance Society of the United States hired Morris J. Taft as an insurance agent in 1964 and issued a group insurance policy covering him. Under the policy, Equitable agreed to pay full disability benefits in the event Taft became "totally disabled." The policy defined "total disability" in relevant part as being "unable to engage in any gainful occupation for which [Taft] is or may reasonably become qualified by education, training, or experience."
 
 
 3
 In 1975, Taft's chronic back problems worsened and he applied for disability benefits. After examining him, Equitable found Taft totally disabled under the policy and began paying benefits. Each year thereafter, Taft submitted to Equitable an Attending Physician Statement ("APS") from his doctor certifying Taft's continuing disability. Until 1988, each APS submitted by Taft noted that his condition was "unchanged." In 1988, however, Taft's APS noted that his condition had "improved."
 
 
 4
 Based upon this change, Equitable[1] required Taft to submit to an independent medical examination by Dr. Robert Audell in order to determine Taft's entitlement for continuing benefits. In his subsequent report, which is a central document in this appeal, Dr. Audell concluded that Taft was not totally disabled and that, "even with his current complaints, [Taft] should be able to perform his job duties as an insurance agent."
 
 
 5
 As a result, Equitable notified Taft that it was terminating his benefits and gave him sixty days in which to appeal the adverse determination and submit any evidence to support his case. Taft subsequently visited Dr. Milton Ashby for a second opinion. After examining Taft without the benefit of his prior medical records, Dr. Ashby concluded, in a report which is also central to this appeal, that he could not "suggest that [Taft] is totally disabled from all types of work." Taft submitted no additional evidence and Equitable reaffirmed the termination of benefits.
 
 
 6
 Taft subsequently filed a complaint in state court and Equitable removed the action to the district court. Taft alleged that Equitable had abused its discretion by relying on the reports of the two doctors. Specifically, Taft noted that Dr. Audell's report indicated that the doctor thought he was examining Taft in connection with a workers' compensation proceeding for an unrelated neck injury Taft had suffered in 1983. Taft also pointed out that Dr. Ashby's report indicated that the doctor did not have sufficient information on which to base a firm conclusion that Taft was totally disabled.
 
 
 7
 In a bench trial, the district court heard extensive testimony from Dr. Audell, who stated at one point that his conclusions might have been affected had he known Taft had been continuously disabled since 1975. Relying on this testimony and the differences in the two reports, the court held that Equitable had abused its discretion in terminating Taft's benefits.
 
 II.
 
 8
 The beneficiary of an ERISA plan may bring a civil action against a plan administrator "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B) (1988). Where the plan vests the administrator with discretionary authority to determine eligibility for benefits, however, a district court may review the administrator's determinations only for an abuse of discretion. E.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1988); Eley v. Boeing Co., 945 F.2d 276, 278 (9th Cir.1991).[2]
 
 
 9
 Taft's policy granted Equitable the discretionary authority "to construe and interpret the Plan, decide questions of eligibility and determine the amount, manner and time of payment of any distributions." Therefore, the district court correctly applied the abuse of discretion test to review Equitable's decision to terminate Taft's benefits. See, e.g., Bogue v. Ampex Corp., 976 F.2d 1319, 1324-25 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1847, 123 L.Ed.2d 471 (1993).
 
 
 10
 We review de novo the district court's application of this standard and conclusion that Equitable abused its discretion. See Phillips v. Alaska Hotel & Restaurant Employees Pension Fund, 944 F.2d 509, 515 (9th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1942, 118 L.Ed.2d 548 (1992). We hold that it was inappropriate for the district court to examine evidence at trial that was not part of Equitable's administrative record and reverse because, based on the evidence that was in the administrative record, Equitable did not abuse its discretion in terminating Taft's benefits.
 
 A.
 
 11
 We have considered the scope of district court review of administrative discretion under ERISA only once since Firestone. In Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480 (9th Cir.1990), we held that the abuse of discretion standard permits the district court to "review only the evidence presented to the [plan] trustees." Id. at 482. Accord Farrow v. Montgomery Ward Long Term Disability Plan, 176 Cal.App.3d 648, 222 Cal.Rptr. 325, 331 (1986). Because this conclusion is consistent with the nature of abuse of discretion review, furthers the goals of ERISA, and is in line with the decisions of nearly every other circuit to consider the issue, we decline to disturb it here.
 
 
 12
 Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it. Moreover, such expanded review would impede an important purpose of the federal statute under which district courts have jurisdiction to review these administrative decisions:
 
 
 13
 A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously. Permitting or requiring district courts to consider evidence from both parties that was not presented to the plan administrator would seriously impair the achievement of that goal.
 
 
 14
 Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377, 380 (10th Cir.1992) (citation omitted) (quoting Perry v. Simplicity Eng'g, 900 F.2d 963, 967 (6th Cir.1990)).
 
 
 15
 Nothing in the legislative history suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.
 
 
 16
 Perry, 900 F.2d at 966.
 
 
 17
 The Sixth, Eighth, and Tenth Circuits limit the scope of ERISA review in this manner. See, e.g., Sandoval, 967 F.2d at 380; Oldenburger v. Central States S.E. & S.W. Areas Teamster Pension Fund, 934 F.2d 171, 174 (8th Cir.1991); Perry, 900 F.2d at 966. The Third Circuit has also implied that a limited scope of review is proper in this context. See Luby v. Teamsters Health, Welfare, & Pension Trust Funds, 944 F.2d 1176, 1184 & n. 8 (3d Cir.1991).
 
 
 18
 The Fifth Circuit, on the other hand, does permit district courts to examine "some evidence other than that contained in the administrative record" when applying abuse of discretion review. Wildbur v. Arco Chemical Co., 974 F.2d 631, 638 (5th Cir.1992). Even there, however, it appears that district courts may not go beyond the administrative record when reviewing an administrator's application to a plan of the historical facts that underlie an ERISA beneficiary's claim (as opposed to reviewing the consistency of the administrator's interpretations of the plan). Id. at 642. See Southern Farm Bureau Life Ins. Co. v. Moore, 993 F.2d 98, 102 (5th Cir.1993) ("we may consider only the evidence that was available to the plan administrator in evaluating whether he abused his discretion in making the factual determination that the tumor caused or contributed to [the beneficiary]'s death, but we may consider other evidence, which was unavailable to the plan administrator as it relates to his interpretation of the policy").
 
 
 19
 For these reasons, we hold that the district court erred by considering evidence, such as Dr. Audell's testimony, that was not in Equitable's administrative record on Taft.[3]
 
 B.
 
 20
 Although the district court erred by examining additional evidence, we engage in plenary review and therefore may affirm if it appears on the basis of the administrative record that Equitable abused its discretion.
 
 
 21
 In several recent cases, we have held that ERISA plan administrators "abuse their discretion if they render decisions without any explanation, or construe provisions of the plan in a way that conflicts with the plain language of the plan." Eley, 945 F.2d at 279; Johnson v. Trustees of W. Conference of Teamsters Pension Trust Fund, 879 F.2d 651, 654 (9th Cir.1989). Accord Hancock v. Montgomery Ward Long Term Disability Trust, 787 F.2d 1302, 1307 (9th Cir.1986).
 
 
 22
 Equitable cites these decisions and argues that, because it gave Taft an explanation for terminating his benefits and because the conclusion that Taft was not totally disabled does not conflict with the plain language of the plan, our analysis should go no further. We disagree. Although Eley and Johnson do not explicitly say so, abuse of discretion review is not that limited. At the least, an administrator also abuses its discretion if it relies on clearly erroneous findings of fact in making benefit determinations. See Jones, 906 F.2d at 482 ("In order to constitute an abuse of discretion a trustee's factual findings must be clearly erroneous.") (internal quotation omitted); Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1218 (9th Cir.1988) (no abuse of discretion by an ERISA administrator unless the decision is "so patently arbitrary and unreasonable as to lack foundation in factual basis") (internal quotation omitted). This inquiry is used for abuse of discretion review in other contexts, e.g., Campbell v. Blodgett, 997 F.2d 512, 516 (9th Cir.1993), and we explicitly adopt it for use in the ERISA arena.
 
 
 23
 The administrative record before Equitable consisted primarily of the two doctors' reports.[4] Although the reports had weaknesses, we cannot say that the substance of each was so clearly erroneous that Equitable abused its discretion by relying on them. Regarding Dr. Audell's report, it is clear that the doctor recognized that Taft had a back problem that pre-dated his 1983 fall and neck injury. Although Audell did not apply Equitable's specific definition of total disability ("unable to engage in any gainful occupation for which [Taft] is or may reasonably become qualified by education, training, or experience"), he did conclude that Taft could return to work in a semi-sedentary position.[5]
 
 
 24
 Dr. Ashby's report was even more explicit. Ashby actually applied Equitable's plan definition and concluded that Taft was not totally disabled. Taft attacks Ashby's report because the doctor did not have Taft's x-rays when making his conclusions. Taft, however, was the cause of this deficiency because he refused to submit to x-rays by Dr. Ashby, telling the doctor to order negatives from another physician who had them on file. [RT 195].
 
 
 25
 Even the district court, although ultimately going beyond the administrative record, realized that the limited evidence before Equitable supported the insurer's findings:
 
 
 26
 If I had to make an evaluation of Mr. Taft, Mr. Taft may well be a malingerer. He probably overdoes what his injuries really are. From the physical things that are evident, he has very minimal objective findings.... I'm not making this conclusion, but one certainly could, that he sort of likes being disabled and likes getting the payments. He should have been under a much better--you know, had a much better examination than he had. I would have an awful time from what's in these records, even if I felt qualified to do so, to say that there's findings, other than very subjective, that he's totally disabled, but I don't know if I have the ability to do so any more than ... any of the other folks here do.
 
 
 27
 [RT 361] (emphasis added).
 
 
 28
 Taft argues that Equitable could not have relied upon the doctors' reports because they conflicted with each other in specifics such as the degree of Taft's back flexibility. These conflicts, however, did not affect each doctor's ultimate conclusion that Taft was not totally disabled. In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. See Eley, 945 F.2d at 279 (no abuse of discretion to deny benefits despite expert evidence showing that a certain procedure was diagnostic and therefore was covered by the plan); Madden, 914 F.2d at 1285 (not arbitrary and capricious to deny benefits without considering a finding by the social security board that plaintiff was totally disabled); see also Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n, 991 F.2d 356, 358-59 (7th Cir.1993) (no abuse of discretion to deny benefits despite previous finding of disability by social security board); Bolling v. Eli Lilly & Co., 990 F.2d 1028, 1029-30 (8th Cir.1993) ("The [administrator] did not abuse its discretion merely because there was evidence before it that would have supported an opposite decision."); Sandoval, 967 F.2d at 382 (no abuse of discretion to deny benefits despite report by one doctor concluding that plaintiff was totally disabled). Accordingly, Equitable's reliance on the reports, which conflicted in specifics but not conclusions, was not an abuse of discretion.
 
 
 29
 Although neither the district court nor the parties have raised the issue, we finally note that the potential for a conflict of interest is one additional factor to consider in applying abuse of discretion review to the decisions of administrators who are also employers of plan beneficiaries. E.g., Firestone, 489 U.S. at 115, 109 S.Ct. at 956; Eley, 945 F.2d at 279-80. Because Equitable was Taft's employer, we therefore "impose a more stringent version of the abuse of discretion standard" to Equitable's decision. Bogue, 976 F.2d at 1325.
 
 
 30
 The precise nature of the less deferential review in this context is not clear. See Boland v. King County Medical Blue Shield, 798 F.Supp. 638, 642 (W.D.Wash.1992). No matter what the formulation, however, we do not think it helps Taft in this case. Taft presented no evidence, and never even suggested, that Equitable acted in bad faith or had improper motives at any time during his twenty-five year relationship with the company. In the absence of any such evidence, we see no reason to depart from our conclusion that Equitable did not abuse its discretion.
 
 
 31
 We also note that four out of the six cases in this circuit to apply the modified abuse of discretion standard in the employer/employee context refused to overturn an administrator/employer's denial of benefits. Indeed, the primary function of the heightened review appears to be enabling plaintiffs to defeat summary judgment. Compare Bogue, 976 F.2d at 1325 (no abuse of discretion in denying severance benefits) and Eley, 945 F.2d at 279 (no abuse of discretion in denying diagnostic procedure payments) and Fielding v. International Harvester Co., 815 F.2d 1254, 1256 (9th Cir.1987) (no abuse of discretion in denying early retirement benefits) and Jung v. FMC Corp., 755 F.2d 708, 712 (9th Cir.1985) (no abuse of discretion in denying severance benefits) with Dytrt, 921 F.2d at 894-95 (reversing summary judgment, finding possible abuse of discretion by forcing an immediate decision regarding early retirement) and Pilon v. Retirement Plan for Salaried Employees of Great N. Nekoosa Corp., 861 F.2d 217, 219 (9th Cir.1988) (reversing summary judgment, finding material issue of fact regarding employer's good faith).
 
 III.
 
 32
 The district court erred by considering evidence that was not part of Equitable's administrative record. Because Equitable did not abuse its discretion in terminating Taft's disability benefits based solely upon that record, we reverse.
 
 
 33
 REVERSED.
 
 
 34
 RYMER, Circuit Judge, concurring in part and dissenting in part:
 
 
 35
 I agree that the district court should not have examined evidence outside the administrative record in this case, but I cannot conclude that its determinations that Equitable "should have known the report provided by Dr. Audell was not the report requested," that Equitable "knew Dr. Ashby had not seen any prior reports or x-rays," and that Equitable "had insufficient evidence to determine that [Taft] was able to obtain full-time employment based on his experience, education or training" are incorrect. Because Dr. Audell's report indicates on its face that it was based on a non-pertinent injury and immaterial workers' compensation criteria, and Dr. Ashby's indicates that he hadn't seen any x-rays, I would affirm for lack of substantial evidence.
 
 
 
 *
 Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 [1]
 Equicor, a subdivision of Equitable, actually administered the plan for Equitable
 
 
 [2]
 In several cases after the Supreme Court's Firestone decision, we used the term "arbitrary and capricious" to describe this deferential standard of review. See Dytrt v. Mountain State Tel. & Tel. Co., 921 F.2d 889, 894 (9th Cir.1990); Madden v. ITT Long Term Disability Plan, 914 F.2d 1279, 1284 (9th Cir.1990), cert. denied, 498 U.S. 1087, 111 S.Ct. 964, 112 L.Ed.2d 1051 (1991). Because we employed review in those cases consistent with the strictures of the abuse of discretion standard, however, our use of a different term was "a distinction without a difference." Cox v. Mid-America Dairymen, Inc., 965 F.2d 569, 572 n. 3 (8th Cir.1992). See Block v. Pitney Bowes Inc., 952 F.2d 1450, 1454 (D.C.Cir.1992) ("The distinction, if any, between 'arbitrary and capricious review' and review for 'abuse of discretion' is subtle.")
 
 
 [3]
 We express no opinion on the proper scope of a district court's de novo review of an administrator's decision. Compare Luby, 944 F.2d at 1184 (district court may examine all evidence when engaging in de novo review) with Perry, 900 F.2d at 966 (district courts limited to the administrative record even with de novo review)
 
 
 [4]
 Taft suggests that Dr. Ashby's report is not part of the record because Equitable made its initial determination to terminate Taft's benefits before it received the report. This contention is incorrect because Equitable did rely on Dr. Ashby's report to reject Taft's appeal of the initial determination
 
 
 [5]
 Taft contends that Audell's report was clearly erroneous because the doctor thought he was examining Taft in connection with a workers' compensation proceeding. We disagree. Equitable's plan defined "total disability" as an inability "to engage in any gainful occupation for which [Taft] is or may reasonably become qualified by education, training, or experience." Disability determinations under California workers' compensation law include consideration of "the occupation of the injured employee, [ ] his age at the time of [the] injury, ... [and] the diminished ability of [the] injured employee to compete in an open labor market." Cal.Lab.Code § 4660(a) (West 1989). Audell's application of this statutory standard did not prejudice Taft