56 F.3d 70
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 John BACHLER, Plaintiff-Appellant,
v.
George BAYLESS; Marvin Hurtgen; Charles Steeley, Trustees of
the Washington Printing Industries Health and
Welfare Insurance Fund, Defendants-Appellees.
 No. 94-35322.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 1, 1995.
Decided May 30, 1995.
 
 Before: WRIGHT, BOOCHEVER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 * John Bachler sued the trustees of the Washington Printing Industries Health & Welfare Insurance Fund ("the trust"), alleging that they breached their fiduciary duties by failing to force employers with CBAs to continue to provide the major medical plan.[1] Collective bargaining agreements (CBAs) required employers to provide a major medical plan until 1995. Subscriber agreements allowed the trustees to terminate with thirty days notice. After a bench trial limited to the meaning, interpretation and application of Sec. 7.06 of the trust agreement and the subscriber agreement, the court found that the trustees did not breach their fiduciary duties because the subscriber agreements were controlling. Bachler appeals. We affirm.
 
 II
 
 3
 When a plan vests trustees with discretionary authority, we defer to their interpretation of a trust agreement unless it is arbitrary and capricious or an abuse of discretion. McKenzie v. General Tel. Co. of Cal., 41 F.3d 1310 (9th Cir. 1994), cert. denied, 115 S. Ct. 1697 (1995).[2] In this case, under Sec. 5.01 of the trust agreement, the trustees have "the full and exclusive authority to administer the fund and benefit plans created hereunder." Section 5.03 provides that the trustees have the sole authority to "design and determine the details" of the trust's benefits. In addition, Sec. 5.04 provides that the trustees "have the power to construe all ambiguous and doubtful provisions" of the trust agreement and that any construction adopted by the trustees is binding. As the trustees have discretionary authority to administer the trust, we defer to their interpretation unless it is arbitrary and capricious.
 
 
 4
 The potential for a conflict of interest, however, is an additional factor to consider in applying arbitrary and capricious review to the decisions of administrators who are also employers of plan beneficiaries. Taft v. Equitable Life Assurance Soc'y, 9 F.3d 1469, 1474 (9th Cir. 1993). Because three of the four trustees were also managers or owners of firms bound by CBAs, we "'impose a more stringent version"' of the arbitrary and capricious standard to the trustees' decision. Id. (citations omitted). We review de novo the court's application of this standard. McKenzie, 41 F.3d at 1314.
 
 III
 
 5
 Even under the more stringent standard of review, we conclude that the court correctly deferred to the trustees' interpretation that the subscriber agreements controlled over Sec. 7.06.[3] These trustees had to interpret the trust agreement to determine if Sec. 7.06 created a mandatory obligation on the part of the employers to contribute to the trust or if the subscriber agreements allowed an employer to terminate participation with thirty-days notice. If Sec. 7.06 controlled, the trustees had a duty to protect the contractually created trust asset. If the subscriber agreements controlled, the trustees had no such duty.
 
 
 6
 The court heard evidence of the intent of the parties, past interpretations, past practices and past usage. The evidence showed that the subscriber agreements were necessary and more specific than Sec. 7.06. The history of the trust showed that the trustees and participating employers relied on the subscriber agreements and not Sec. 7.06. During the life of the trust, several employers bound by CBAs had used the thirty-day notice provision of the subscriber agreement to withdraw from the trust. The trustees never used Sec. 7.06 to force an employer to remain in the trust. The trustees were not acting arbitrarily and capriciously when they concluded that there was no contractual obligation for an employer to continue to contribute to the trust.[4]
 
 IV
 
 7
 Finally, we conclude that in the absence of any duty in the trust agreement, the CBA obligation was not a trust asset that the trustees were required to protect. Although a trust stands in the position of a third-party beneficiary of a CBA, Southwest Admin'rs, Inc. v. Rozay's Transfer, 791 F.2d 769, 773 (9th Cir. 1986), cert. denied, 479 U.S. 1065 (1987), this does not mean that the trust has a duty to enforce a CBA. In the absence of express language in the trust agreement, the general rule is that employee benefit trusts are not bound by provisions of a CBA. See Carpenters Health & Welfare Trust v. Bla-Delco Constr., Inc., 8 F.3d 1365, 1369 (9th Cir. 1993).[5]
 
 
 8
 Other circuits examining this question have also concluded that there are sound policies underlying this general rule. The Fourth Circuit concluded:
 
 
 9
 To say ... that by accepting or collecting such contributions the trustees are bound by all of the terms of the [CBA] would be to completely dissipate the law of trusts, leaving employee benefit funds vulnerable to the recurring whims of employer/union bargainers. One of the principal purposes of ... ERISA was to avoid just such an effect.
 
 
 10
 Sinai Hosp. v. National Benefit Fund, 697 F.2d 562, 568 (4th Cir. 1982). We agree that the better view is that trustees are not bound by the provisions of a CBA unless the trust agreement specifically binds them.
 
 
 11
 This is not to say that trustees would never have a duty to enforce a CBA. A trustee may be required to ensure that the trust receive all contributions to which it is entitled under a CBA. For example, an employee may sue the trustees to enforce an agreement for past required contributions. See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270 (2d Cir. 1992). Or trustees may determine independently, using their discretionary authority, that they must sue to protect future contributions. See Bituminous Coal Operators' Ass'n, Inc. v. Connors, 867 F.2d 625 (D.C. Cir. 1989). We believe, however, that here the trustees were given the discretion to interpret the trust agreement and their decision was not arbitrary and capricious.
 
 AFFIRMED.[6]
 BOOCHEVER, Circuit Judge, dissenting:
 
 12
 Because I believe the trustees breached their fiduciary duty by terminating the plan, I respectfully dissent.
 
 
 13
 Although a trustee's decisions will generally be sustained unless they are arbitrary or capricious, less deference is afforded to a trustee's decision if it implicates a serious conflict between the interests of an employer as trustee and the beneficiaries. Oster v. Barco of Cal. Employees' Retirement Plan, 869 F.2d 1215, 1217 (9th Cir. 1989) (as amended).
 
 
 14
 In the case before us, there was a conflict of interest between the trustees and the employee beneficiaries. The three largest employers subscribing to the Washington Printing Industries Health and Welfare Insurance Fund ("WPI") were all bound by CBAs which required them to maintain "Plan M" medical insurance for their employees through WPI until the CBAs expired. Three of the four trustees of WPI were owners or managers of the three companies. The trustees as employers stood to benefit by the termination of Plan M because they would no longer be compelled to make contributions to maintain it. The employees, however, lost their major medical coverage under the plan as a result of the trustees' decision. Thus, less deference should be paid to the trustee's actions than that afforded by the majority.
 
 
 15
 ERISA requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries" and "with the care, skill, prudence, and diligence" that a prudent man would utilize under similar circumstances. 29 U.S.C. Secs. 1104(a)(1), (a)(1)(B). The trustees breached their fiduciary duty by terminating Plan M when the CBAs specifically mandated that the participating employers maintain Plan M on behalf of their employees. The trust agreement distinguished between employees who were covered by CBAs and those who were not. Section 2.01 provided:
 
 
 16
 Participants: [WPI] is established for the benefit of ...:
 
 
 17
 2.01(a) Employees covered by any Collective Bargaining Agreement providing for a welfare benefit plan.
 
 
 18
 2.01(b) Employees not covered by a Collective Bargaining Agreement or employers for whom contributions are made into this fund.... [SER Exh. 1-5]
 
 
 19
 Section 7.06 of the trust agreement provided:
 
 
 20
 Duration of Liability For Contributions: With respect to the Employers contributing under Section 2.01(a), the contributions made for all participating employees are mandatory as to any subscriber hereto, from and after the date that its subscription agreement is accepted by the Board of Trustees. With respect to employers contributing under paragraph 2.01(b) ..., the contributions shall be made until such time as the subscriber revokes its subscription agreement in writing. [SER Exh. 1-22]
 
 
 21
 Thus, the trust agreement made employer contributions mandatory for all employees covered by CBAs. Section 7.06's requirements are consistent with those specified in ERISA:
 
 
 22
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 
 
 23
 29 U.S.C. Sec. 1145.
 
 
 24
 The trustees maintain that the requirements of Sec. 1145 apply only to "multiemployer plans" and that WPI is not a "multiemployer plan," but a "multiple employer welfare arrangement." ERISA defines the two as follows:
 
 
 25
 The term "multiemployer plan" means a plan --
 
 
 26
 (i) to which more than one employer is required to contribute,
 
 
 27
 (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer, and
 
 
 28
 (iii) which satisfies such other requirements as the Secretary may prescribe by regulation.
 
 
 29
 The term "multiple employer welfare arrangement" means an employee welfare benefit plan, or any other arrangement ... which is established or maintained for the purpose of offering or providing ... benefit[s] ... to the employees of two or more employers ..., except that such term does not include any such plan or other arrangement which is established or maintained --
 
 
 30
 (i) under or pursuant to one or more agreements which the Secretary finds to be collective bargaining agreements.
 
 
 31
 29 U.S.C. Secs. 1002(37)(A), (40)(A) (emphasis added). The trustees argue that WPI was not "established or maintained" pursuant to a CBA and that thus, WPI was not a "multiemployer plan" to which the participating employers were obligated to contribute under Sec. 1145.
 
 
 32
 The trustees' argument is not persuasive. Although WPI was not established by the CBAs, the trust was maintained, at least on behalf of those employees who were covered by the CBAs, pursuant to the CBAs which required Plan M coverage by WPI. By the unambiguous language of the statute, WPI qualified as a "multiemployer plan." Therefore, those employers who had a contractual obligation under their CBAs and under Sec. 7.06 of the trust agreement to contribute to WPI also had a statutory obligation to do so under Sec. 1145.
 
 
 33
 It is established that in an action to collect contributions, a trust stands in the position of a third party beneficiary of the CBA. Carpenters Health & Welfare Trust Fund v. Bla-Delco Constr., 8 F.3d 1365, 1369 (9th Cir. 1993). ERISA trustees must "act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." Central States Pension Fund v. Central Transp., Inc., 472 U.S. 559, 571 (1985). ERISA therefore authorizes trustees to bring suit against employers who fail to make contributions to the trust as required by their CBAs. See 29 U.S.C. Secs. 1132(g)(2), 1145.
 
 
 34
 A trustee's failure to ensure that the trust receive all contributions to which it is entitled under a CBA may constitute a breach of fiduciary duty. See Diduck v. Kaszycki & Sons Contractors, Inc., 974 F.2d 270, 277 (2d Cir. 1992). It is clear that "benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 314 (2d Cir.), cert. denied, 498 U.S. 982 (1990).
 
 
 35
 The majority suggests that trustees are required only to enforce CBA terms against delinquent employers for "past required contributions, not future contributions." Majority disposition, page 3, footnote 2. This is a distinction without a difference. Whether viewed as past or prospective contributions, ERISA authorizes trustees to bring collection actions against employers to compel them to make contributions as required by their CBAs. See 29 U.S.C. Sec. 1145; Bituminous Coal Operators' Ass'n, Inc. v. Connors, 867 F.2d 625, 633 (D.C. Cir. 1989) (as amended) ("[W]e cannot agree that [29 U.S.C. Sec. 1145] applies only to delinquent contributions; rather, it entitles pension funds to rely upon, and to enforce, the written terms of collective bargaining agreements insofar as they relate to pension contributions, whether delinquent or anticipated.") (emphasis added).
 
 
 36
 The majority relies on Carpenters, for the proposition that employee benefit trusts are not bound by the provisions of a CBA. In Carpenters, however, the court held merely that the terms of a CBA which required all disputes to be arbitrated were not binding on trust funds that were not parties to the CBA. See 8 F.3d at 1369. The trust agreement contained express language stating that the actions of the trust would not be limited or restricted by any arbitration procedures specified in a CBA. This is very different from the instant case where the CBA terms at issue require the employers to keep the plan funded, where the trust agreement does not state that the CBA terms are not binding, and where the trust agreement in fact specifically provides in Sec. 7.06 that contributions from employers with CBAs are mandatory.
 
 
 37
 Here, the CBA obligations created a trust asset that the trustees were required to protect. As Bachler maintains, a contractual obligation to be performed by the trust is a trust liability, while a contractual obligation to the trust is a trust asset. The issue is not whether WPI was "a party to" or "bound by" the CBAs, but whether some other party, namely the employer, was party to or bound by the CBAs. Because the employers who were bound by CBAs, including the three largest subscribers, had an obligation under their CBAs to fund WPI and maintain Plan M, the trust possessed an asset that the trustees were required to preserve vigorously, and they breached their fiduciary duty by abandoning it.
 
 
 38
 The Subscriber Agreements do not dictate otherwise. If an employer with a CBA decided to exercise the 30-day notice clause in the Subscriber Agreement and terminate its participation in WPI, the employer would be in breach of its labor agreement, and the trustees would have the right to sue the employer for the delinquent contributions. See 29 U.S.C. Secs. 1132(g)(2), 1145.
 
 
 39
 Although, as indicated above, the trustees did not have the power to terminate the plan under the Subscriber Agreements, even if we assumed that the trustees had such power, that does not mean that their decision to terminate the plan was no longer subject to fiduciary standards. They had a duty to act in the interest of the employee beneficiaries. There was no contention that funding the plan became so prohibitively expensive that it constituted an impossibility to maintain it. Nor was there any contention that it was not in the best interests of the employees that the plan be maintained.
 
 
 40
 The trustees conducted a survey of the subscribing employers, inquiring whether their employees wanted to continue participation in the plan and stating that a failure to respond would be considered an indication of lack of interest. By this slick maneuver, the trustees were able to secure backing to discontinue the plan without having their own companies as employers take any affirmative action that would constitute a breach of their CBA promises to maintain the plan. Because the companies themselves could not stop contributing to WPI without violating their CBAs, the employers, wearing their hats as trustees, here did indirectly what they could not do directly, i.e. they avoided the obligation of funding Plan M for their employees.
 
 
 41
 Therefore, regardless of whether the Subscriber Agreements authorized termination of the plan, the trustees could not take that action without breaching their fiduciary duty to the employee beneficiaries. Their action deprived employees of medical benefits granted by CBAs which were specifically negotiated by their unions. In failing to enforce those CBA promises, the trustees breached their duties as fiduciaries to act in the interest of the beneficiaries.
 
 
 42
 Accordingly, I would reverse the district court's judgment.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Initially, the district court granted Bachler's motion for summary judgment, finding that Sec. 7.06 created a contractual obligation that became an asset of the plan and gave rise to a fiduciary duty on the part of the trustees to pursue this asset and enforce this contractual obligation. On reconsideration, the court found that the subscriber agreements created a genuine issue of material fact and vacated the summary judgment
 Bachler argues that the court erred in vacating the original order. After a trial on the merits, the denial of a motion for summary judgment is not reviewable on appeal. See Lum v. City and County of Honolulu, 963 F.2d 1167, 1170 (9th Cir.), cert. denied, 113 S. Ct. 659 (1992). The court properly denied Bachler's fee request when the order was vacated.
 
 
 [2]
 There is no distinction between "abuse of discretion" and "arbitrary and capricious". McKenzie, 41 F.3d at 1314 n.3. The terms are used interchangeably
 
 
 [3]
 As our analysis does not depend on it, we do not reach the question whether this plan is a multiemployer plan. We believe that the dissent unnecessarily conflates the "multiemployer" discussion with the trust agreement interpretation. ERISA provides that:
 Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
 29 U.S.C. Sec. 1145 (emphasis added). Even if a plan is a "multiemployer plan," Sec. 1145 imposes no duty on a trust to force an employer to contribute to the plan unless the plan's terms obligate the employer to do so. Here, we must determine if there was such an obligation on the part of the employer to the trust.
 
 
 [4]
 The dissent argues that the trustees breached their fiduciary duties in terminating Plan M because they did not act solely in the interests of the plan participants. The parties stipulated that the trial was limited to the meaning, interpretation and application of Sec. 7.06 of the trust agreement and the subscriber agreement. The court did not hear evidence on how the trustees reached the decision to terminate Plan M and we cannot evaluate the merits of that issue
 
 
 [5]
 The dissent would distinguish the trust agreement in Carpenters from the one before us because the Carpenters agreement contained express language that the trust would not be limited by any arbitration procedures in a CBA. Carpenters, however, relies on Schneider Moving & Storage v. Robbins, 466 U.S. 364 (1984), where the Court refused to infer such an arbitration requirement in a trust agreement that was silent on the issue. Id. at 374
 The Supreme Court's dictum in NLRB v. Amax Coal Co., 453 U.S. 322, 337 (1981), that "trustees have an obligation to enforce the terms of [a CBA] against the employer," does not apply here. The trustees in Amax operated under a detailed written agreement which, unlike the trust here, was itself the product of collective bargaining.
 
 
 [6]
 The trustees have asked for fees on appeal. The request is denied. There is no indication that Bachler "acted in bad faith" in bringing this suit or that his contentions were "completely without merit." See West v. Greyhound Corp., 813 F.2d 951, 956 (9th Cir. 1987). The parties will bear their own costs