**Louise BRADEN, et al., individually and on behalf of others similarly situated, Plaintiff,**

v.

**LSI LOGIC CORP., LSI Logic Corp Severance Plan, and Does 1 through 30, inclusive Defendants.**

**No. C–03–00141 RMW.**

United States District Court,
N.D. California,
San Jose Division.

Oct. 20, 2004.

David A. Lowe, Alan Bruce Exelrod, Steven Gary Zieff, Rudy Exelrod & Zieff LLP, San Francisco, CA, for Plaintiffs.

James P. Baker, Virginia H. Perkins, Orrick Herrington & Sutcliffe, San Francisco, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

WHYTE, District Judge.

Before the court is a motion for summary judgment filed by defendants LSI Logic Corp. ("LSI") and LSI Severance Plan ("LSI Severance Plan"). The court has reviewed the papers in support of defendants' motion and plaintiff Louise Braden's ("Braden") opposition thereto, and considered the oral argument made at the hearing on September 12, 2003. For the reasons set forth below, the court grants defendants' motion.

## I. BACKGROUND

This case involves claims arising out of a mass layoff at LSI's Santa Clara, California facility. Plaintiff Braden is one of over 100 former employees of LSI whose employment at LSI's Santa Clara research and development and operations facility ("Santa Clara facility") was terminated on November 18, 2001.[1] Plaintiff and those individuals whom she represents were also participants in the LSI Logic Corp. Severance Plan. Compl. ¶¶ 6, 49; Murphy Decl. ¶ 2, Ex. 1. After their employment was terminated, plaintiffs submitted claims to the LSI Logic Corp. Severance Plan for unpaid severance benefits. The claims were denied. Ultimately, plaintiffs filed suit claiming that defendants' denial of benefits constituted a violation of the Worker Adjustment and Retraining Notification ("WARN") Act, 29 U.S.C. § 2102 *et seq.* and the Employee Retirement Income Security Act ("ERISA"). *See* 29 U.S.C. § 1132(a)(1)(B).

Generally, the facts relevant to the instant motion are not disputed by the parties. Essentially, defendants' motion re-

lates to the facts surrounding plaintiffs' layoffs, the denial of plaintiffs' claims for benefits, and the operation and interpretation of two documents: (1) an Employee Information sheet distributed by LSI on the date plaintiffs were notified of their impending layoff; and (2) the LSI Logic Corporation Severance Plan and Summary Plan Description ("SPD").

### A. *September 19, 2001 Notification of Layoff*

On September 19, 2001, LSI announced a significant reduction in the workforce at its Santa Clara facility. LSI's announcement came via letter signed by LSI's Employee Relations Manager, Greg Heubel. *See* Murphy Decl. ¶ 2, Ex. 1. Plaintiffs received the letter on September 19. The letter, addressed "Dear Santa Clara Employee," informed the recipients that "your official separation date is November 18, 2001, and you will continue to receive your regular pay and benefits through that date." *Id.* The letter further stated that "[b]etween now and November 18, 2001, unless otherwise instructed by your manager, you will be relieved of all job responsibilities so that you may concentrate on finding new employment." *Id.* The September 19 letter encouraged use of career transition services offered by the company and stated that plaintiffs could begin work for a new employer prior to their official separation date.

LSI's September 19 letter also informed plaintiffs that they may be eligible for benefits under the LSI Logic Corp. Severance Plan ("Severance Plan"). Specifically, the letter stated that as a result of the layoff, plaintiffs "may be eligible for severance benefits in accordance with the LSI Logic Severance Plan and Summary Plan

---

**1.** Braden is one of approximately twenty plaintiffs who have filed suit on behalf of a proposed class of similarly situated persons.

Description, as modified by the LSI Logic Employee Information document." *Id.* The letter advised plaintiff to read the Employee Information sheet and Plan carefully because "those documents govern your rights to severance benefits." *Id.*

B. *LSI Logic Corporation Severance Plan and Summary Plan Description*

The LSI Severance Plan is an employee designed welfare benefit plan as defined under ERISA. *See* Murphy Decl. ¶ 5, Ex. 3 at 2. The Severance Plan was primarily designed to provide eligible employees with financial assistance while seeking new employment. *Id.* Furthermore, according to the Summary Plan Description ("SPD"), the Severance Plan was "intended to satisfy, where applicable, the obligations of the Company under the Federal Worker and Retraining Notification ('WARN') Act." *Id.*

An employee is eligible for benefits under the Severance Plan according to the following eligibility requirements:

You will generally be eligible for severance benefits under the Plan if:

- you are a regular U.S. employee of the company;
- your active employment is involuntarily terminated as a result of work force reduction or job elimination on or after March 19, 2001, and before the expiration of the Plan; and
- if you were given advance notice of the effective date of a work force reduction or job elimination, you continue to satisfactorily provide services to the Company as its employee through the date contained in the advance notification of a work force reduction or job elimination;

- you are not in one of the excluded categories listed below.

*Id.* at 2. The parties apparently do not dispute that plaintiff was eligible for benefits under the Severance Plan.

An employee's severance pay under the Severance Plan is based on the employee's (1) base salary and (2) years of service to the company. *See id.* at 3. Severance pay is calculated according to the following guideline. The employee is entitled to three weeks of base salary[2] plus one additional week of base salary for each year of service[3] to the company. *Id.* Therefore, for example, an employee with two years of service is entitled to severance pay amounting to five weeks of base salary. The employee receives severance pay in a lump-sum. *Id.* at 4. Further, severance pay is accompanied by a final payment of wages earned, as well as a lump-sum payment for any earned, but unused, vacation time. *Id.*

In addition to severance pay, eligible employees also receive certain benefits under the Severance Plan. *See id.* These benefits are set forth in the SPD under a heading entitled "Other Benefits Guidelines" and include: temporary continuation of health plan coverage in accordance with the Consolidated Omnibus Budget Reconciliation Act (COBRA), temporary continuation of basic life insurance and accidental death and dismemberment coverage, and the ability to purchase vested stock options in accordance with the employee's stock option agreement. *See id.* at 4–5. Of critical importance to the instant lawsuit, however, is a portion of the SPD which follows the description of the benefits iden-

---

2. The plan defines "base salary" generally as the employee's level of base salary and regularly scheduled overtime only. *Id.* In other words, a week of base salary means base salary divided by fifty-two. *Id.*

3. The plan defines "year of service" as "twelve (12) full months of employment with the Company during which the eligible employees is in active (not temporary) status with the Company." *Id.* at 4.

tified above. The critical portion of the SPD states:

> Should the termination of your employment be deemed to be covered by the WARN Act, the severance benefits above shall be considered to be payments required by that Act. Accordingly, any payments under this Plan shall be reduced dollar-for-dollar by payments required pursuant to the WARN Act, and all other benefits otherwise provided by this Plan will be offset by benefits required pursuant to the WARN Act.

*Id.* at 5. Based on this provision from the SPD—along with the Employee Information sheet detailed below—defendants denied plaintiffs' requests for additional Severance Plan benefits.

### C. *Employee Information Document*

LSI provided all employees subject to the layoff with a document entitled "LSI Logic Corporation Employee Information" (the "Employee Information sheet") along with its September 19 letter. The Employee Information sheet pertained to eligibility and calculation of benefits under the Plan, and its scope was limited to those employees who received the September 19 letter:

> ### A. *Scope*
>
> This Employee Information sheet pertains *only* to employees affected by the reduction in force at LSI Logic's Santa Clara facilities, as announced on September 19, 2001 (the "Santa Clara Action").
>
> This document modifies certain eligibility requirements, benefit calculations and other terms and conditions contained in the LSI Logic Severance Plan & Summary Plan Description ("the Plan") contained in the Employee Handbook, and is in effect exclusively for affected employees of the Santa Clara Action.

Murphy Decl. ¶ 3, Ex. 2. In accordance with the September 19 letter, the information sheet also stated that employees affected by the layoff would "receive regular pay and benefits from September 19, 2001 through November 18, 2001 (the 'Notice Period'), at which time their employment will terminate." *Id.* The sheet continued, stating that "[n]otice and payments under this Employee Information sheet and the Plan are calculated to satisfy, where applicable, obligations under the Worker and Retraining Notification ("WARN") Act." *Id.*

The Employee Information sheet also contained the following information with respect to severance benefits:

> Severance benefits for eligible employees shall be paid in accordance with the terms and conditions of the Plan. However, for Affected Employees, severance benefit calculations under the Plan will be modified as follows:
>
> 1. An Affected Employee will receive continuation of "Base Salary" (as defined in the plan) for each regularly scheduled working day between September 19, 2001 and November 18, 2001 (the "Notice Period").
>
> .    .    .    .    .
>
> 3. In addition to payments outlined in paragraph[ ] C.1 . . . of this document, Affected Employees eligible for Plan benefits, will receive severance pay based upon each completed "Year of Service" (as defined in the Plan), in accordance with the following table. Payments under this paragraph C.3. will be reduced by any Base Salary paid to an Affected Employee as described in paragraph C.1 for the period of September 19, 2001 through November 18, 2001. For example, an Affected employee eligible for Plan benefits who has ten (10) years of completed service would receive: 13

weeks of Base Salary minus Base Salary paid through the Notice Period. *Id.*

### D. *Denial of Plaintiffs' Claims for Unpaid Severance Benefits*

On or about January 21, 2002, multiple employees who were subject to the mass layoff at LSI, including plaintiffs Roger Cainglit and Bobbie Nelson, filed claims with the Plan for unpaid severance benefits. *See* Murray Decl. ¶ 6, Ex. 4 (Cainglit Claim for Severance Plan Benefits); *id.* Ex. 5 (Nelson Claim for Severance Plan Benefits). In total, approximately 80 plaintiffs filed claims for severance benefits with the plan administrator. Opp'n at 7. Apparently, all such plaintiffs were represented by the same counsel. The substantive basis of each plaintiff's claim is identical; the claims differ only with respect to each claimant's date of employment, position, and compensation level. *Id.* Each claimant alleges that the plan administrator's decision to reduce severance benefits by salary paid to employees during the WARN Act notice period violated the Plan and the WARN Act. *Id.* Each claimant requested payment of the amount of the deducted benefits. *See id.*

Both the Cainglit and Nelson claims were denied by letter dated March 22, 2002. *See id.* ¶ 7, Ex. 6 (letter denying Cainglit claim); *id.* Ex. 7 (letter denying Nelson claim). In denying the claims, the plan administrator relied on both the Employee Information sheet as well as the SPD.[4] *See id.* at 2–5. The Administrator first noted the section of the Employee Information sheet stating that severance pay "will be reduced by any Base Salary paid to an Affected Employee .... for the period September 19, 2001 through No-

vember 18, 2001" and then pointed out that the SPD provision describing the offset of severance benefits against "payments required by the WARN Act." *See id.* (quoting from the Employee Information sheet and SPD). In reliance on these provisions primarily, the plan administrator concluded that the salary paid to plaintiffs between September 19, 2001 and November 18, 2001 was required by the WARN Act and that the Plan required plaintiffs' total severance pay to be reduced by the salary paid during the sixty day notice period. *Id.* at 5.

After the denial of the Cainglit and Nelson claims, counsel for defendants and counsel for plaintiffs agreed to consolidate and expedite the claim procedure under the plan. The parties agreed that defendants would not be required to send additional claim denials beyond those denials already sent to Cainglit and Nelson. *See* Baker Decl. ¶ 3, Ex. 2 at 1. The parties further agreed that all plaintiffs would submit one consolidated appeal of the claim denials and that the plan administrator would make only one response to the consolidated appeal. *Id.* at 1–2.

Plaintiffs filed their consolidated administrative appeal on May 16, 2002. On appeal, plaintiffs essentially argued that defendants' decision to offset severance benefits due under the Plan by salary paid to plaintiffs during the sixty-day notice period violated either the WARN Act or ERISA. *See* Baker Decl. ¶ 4, Ex. 3 at 2. Plaintiffs first argued that to the extent defendants offset plaintiffs' ERISA plan benefits by notice period payments, defendants' actions "simply den[ied] employees the protection of the WARN Act." *Id.* Apparently, plaintiffs' position was that Congress intended the WARN

---

4. The Plan gives the plan administrator discretion to administer and interpret the plan. *See* Murphy Decl. ¶ 5, Ex. 3 at 5 ("As the Plan Administrator, the Company has full discre-

tionary authority to administer and interpret the Plan, including discretionary authority to determine eligibility for participation and for benefits under the Plan....").

Act to provide protection to covered employees *in addition to* any other statutory or contractual benefits to which they may be entitled. *Cf.* Opp'n at 17 (more clearly articulating this argument). By subtracting notice period wages from severance pay, defendants effectively nullified the benefit conferred on plaintiffs by the WARN Act. Alternatively, plaintiffs argued that the wages they were paid between September 19, 2001 and November 18, 2001 were not "payments required by the WARN Act" as contemplated by the SPD. Baker Decl. ¶ 4, Ex. 3 at 2. According to plaintiffs, the WARN Act "only requires payments to be made to employees (in the form of back pay damages) if fewer than sixty days of notice are given to employees affected by a covered layoff or plant closure." *Id.* Therefore, plaintiffs argued, since the wages paid during the notice period were not "payments required by the WARN Act," the Plan did not authorize any set-off for such payments. Thus, defendants' denial of plaintiffs' claims was unwarranted. *Id.*

By letter dated July 11, 2002, defendants denied plaintiffs' consolidated appeal. In denying the consolidated appeal, defendants again relied on, *inter alia,* the provisions of the SPD and Employee Information sheet discussed above. *See* Baker Decl. ¶ 5, Ex. 4. Plaintiffs then filed suit on January 9, 2003.

Plaintiffs' instant lawsuit asserts two claims: (1) defendants' denial of benefits violates the WARN Act; and (2) the denial of benefits constitutes a violation of ERISA. Plaintiffs' claims are premised on the same arguments presented as part of plaintiffs' consolidated administrative appeal.

## II. ANALYSIS

### A. *WARN Act Claim*

■ The WARN Act prohibits an employer falling within its scope from ordering a plant closing or mass layoff without first providing affected employees with sixty days written notice of such closing or layoff. 29 U.S.C. § 2102(a); *Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1156–57 (9th Cir.2001). An employer who fails to provide timely notice is liable to each aggrieved employee "for back pay for each day of violation." 29 U.S.C. § 2104(a)(1)(A). The employer's liability is calculated for the period of the violation, up to a maximum of sixty days. 29 U.S.C. § 2104(a)(1). The remedial back pay provided by section 2104(a)(1)(A) is a "make-whole compensatory remedy." *Las Vegas Sands,* 244 F.3d at 1159. Damages under the WARN Act are meant to "compensate employees for the money they would have earned but for the premature closure in violation of the … Act." *Id.*

■ An employer's total liability under section 2104(a)(1), however, may be reduced if the employer made other qualifying payments during the sixty-day notice period. Specifically,

(2) The amount for which an employer is liable under paragraph (1) shall be reduced by—

(A) any wages paid by the employer to the employee for the period of the violation; [and]

(B) any voluntary and unconditional payment by the employer to the employee that is not required by any legal obligation….

29 U.S.C. § 2104(a)(2). Indeed, an employer's WARN Act liability may only be reduced where the employer makes *voluntary* payments to the affected employees. Payments made pursuant to a severance agreement or ERISA benefit plan—*i.e.,* pursuant to a pre-existing legal obligation—are not "voluntary" as contemplated by section 2104(a)(2)(B). *See Las Vegas Sands,* 244 F.3d at 1159–1160 (em-

ployer not entitled to deduct obligatory severance payments from total WARN Act liability); *Ciarlante v. Brown & Williamson Tobacco Co.*, 143 F.3d 139, 152 (3d Cir.1998) (employer not entitled to deduct ERISA payments the company was already legally obligated to pay, even where benefits were labeled as "salary continuation benefits"). Thus, where an employer effects a mass layoff without notice to its employees and is, therefore, liable to those employees for 60 days of back pay pursuant to section 2104(a)(1)(A), the employer may not deduct from its WARN Act liability severance payments it has already made pursuant to pre-existing agreements.

█ In the present case, plaintiffs present a unique claim that defendants violated the WARN Act. Plaintiffs do not dispute that the defendants gave them sixty days written notice of their layoff as required by 29 U.S.C. § 2102(a). Nor do plaintiffs dispute that they received their regular pay and benefits between September 19 and November 18, 2001. Instead, plaintiffs essentially contend that any ERISA-regulated, severance benefit plan that offsets total severance pay by wages paid during a WARN Act notice period violates the WARN Act. Plaintiffs' argument pushes the bounds of the WARN Act too far.

█ The purpose underlying the WARN act "is to ensure that workers receive advance notice of plant closures and mass layoffs that affect their jobs. This provides workers with time to adjust to their loss of employment, to seek and obtain alternative jobs, and where necessary, to seek retraining to allow successful competition in the job market." *Alarcon v. Keller Indus., Inc.*, 27 F.3d 386, 388 (9th Cir.1994) (citing 20 C.F.R. § 639.1(a) (1993)). The Ninth Circuit has "held that the Act is 'a wage worker's equivalent of business interruption insurance [that] pro-

tects a worker from being told on payday that the plant is closing that afternoon and his stream of income is shut off.'" *Las Vegas Sands*, 244 F.3d at 1158 (quoting *Burns v. Stone Forest Indus., Inc.*, 147 F.3d 1182, 1184 (9th Cir.1998)). Here, the two-fold objectives of the WARN Act—notice and a continued stream of income—have been met. Plaintiffs were given written notice of their layoff and their employment was not terminated for sixty days. Plaintiffs were paid their regular pay and benefits during the sixty-day period. Plaintiffs' dissatisfaction with the offset of severance benefits under the Plan appears to be more of a veiled complaint regarding the quality of severance plan they were offered by their employer. While plaintiffs may not find a severance plan which offsets benefits by wages paid during a WARN Act notice period to be the most attractive plan, it is certainly the province of the employer to draft the metes and bounds of its ERISA benefit plan—or to offer a plan at all.

Moreover, plaintiffs' argument that such an offset is prohibited by the WARN Act is unavailing. Plaintiffs rely on a portion of the House Conference Report regarding the WARN Act for their assertion that severance benefits may not be offset by wages because benefits are payable as compensation for past services regardless of whether the layoff violated the WARN Act or not. *See* Opp'n at 17 (citing H.R. Conf. Rep. No. 576 100th Cong., 2d Sess. 1053 (1988)). Plaintiffs reliance is misplaced. The cited section of the Conference Report addresses the enforcement of the Act's notice requirement *when an employer is in violation of the Act.* Where an employer violates the Act's notice provisions and is, therefore, liable for sixty days of back pay, the employer cannot offset the back pay remedy by payments it has *already made* to the affected employees under a severance or pension plan. *See* H.R. Conf. Rep. No. 576 100th Cong., 2d Sess.

1053. Indeed, these payments are not wages and are payments owing pursuant to a written agreement. *See id.* Thus, the section of the House report upon which plaintiffs rely essentially stands for the same proposition stated in both *Las Vegas Sands* and *Ciarlante*—there is no offset of WARN Act liability by contractual severance payments because such payments are not voluntary. The House Committee Report does not state that an ERISA plan may not be drafted so to reduce an employee's total severance benefits by wages received while employed during a sixty day notice period.

Defendants' motion for summary judgment with respect to plaintiffs' WARN Act claim is granted.

### B. *ERISA Claim*

■ As an alternative to their WARN Act claim, plaintiffs also have brought a claim under 29 U.S.C. § 1132(a)(1)(B), contending that they are owed benefits under the severance plan for the sixty days they were employed during the WARN Act notice period. Plaintiffs argue that the plan administrator's decision to deny additional plan benefits constituted an abuse of discretion because the decision conflicts with the terms of the plan and because the plan administrator had a conflict of interest which subjects the denial to a more stringent level of review. Defendants, on the other hand, argue that the plan administrator's interpretation of the plan and denial of plaintiffs' claims were consistent with the computation of benefits and offset provisions as defined in the SPD and as further explained in the Employee Information sheet.

■ Under 29 U.S.C. § 1132(a)(1)(B), an ERISA plan beneficiary may bring a civil action against the plan administrator to recover benefits due under the terms of a plan. *Taft v. The Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1471 (9th Cir.

1993). If an "ERISA plan vests the administrator with discretionary authority to determine benefit eligibility, 'a district court may review the administrator's determinations only for an abuse of discretion.' " *Winters v. Costco Wholesale Corp.,* 49 F.3d 550, 552 (9th Cir.1995) (quoting *Taft,* 9 F.3d at 1471); *see also Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989) ("[W]e hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). In addition, if the plan administrator is operating under a potential or actual conflict of interest, "that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone,* 489 U.S. at 115, 109 S.Ct. 948 (internal quotation omitted). The Ninth Circuit has described such review as "a more *stringent* version of the abuse of discretion standard." *Winters,* 49 F.3d at 552 (quoting *Taft,* 9 F.3d at 1474) (emphasis in original).

■ Ultimately, the determination of whether a plan administrator abused its discretion in denying benefits requires the court to consider whether the administrator's interpretation of the plan was reasonable. The court's "inquiry is not into whose interpretation of the plan document is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Winters,* 49 F.3d at 553; *Barnett v. Kaiser Found. Health Plan, Inc.,* 32 F.3d 413, 416 (9th Cir.1994).

As discussed above, when denying plaintiffs' claims for benefits, the plan administrator relied on the language of both the Employee Information sheet and the SPD. The language of the Employee Information sheet is quite clear: "[Severance] Payments under this paragraph ... will be

reduced by any Base Salary paid to an Affected Employee ... for the period of September 19, 2001 through November 18, 2001." Murray Decl., Ex. 2. Plaintiffs, however, contend that the plan administrator may not properly rely on the Employee Information sheet to deny their claims. Opp'n at 11.

According to plaintiffs, the Information sheet amounts to an illegal amendment to the Plan because it was not adopted according to the amendment process detailed in the plan. Specifically, the Information sheet was not signed by the Vice President of Human Resources of the Company as required by the SPD. *See* Murray Decl., Ex. 3 at 6 ("Any action of amending or terminating the Plan shall be in writing and executed by the Vice President of Human Resources of the Company."). Therefore, argue plaintiffs, the calculation of severance pay is determined by reference to the SPD instead of the Information sheet. Opp'n at 11–12. In plaintiffs' view, the language of the SPD does not allow the offset of WARN notice period wages from severance pay.

Defendants counter by arguing that the Employee Information sheet was not an amendment to the plan, but rather an interpretation. Furthermore, defendants argue, even if the Information sheet does not control the calculation of benefits, the plan administrator's interpretation of the SPD—that the WARN Act offset provision precluded an award of additional severance pay—was not unreasonable. As the court agrees with defendants' latter argument, it grants the motion for summary judgment.

*The SPD*

While the language contained in the Employee Information sheet quite clearly states that wages paid between September 19, 2001 and November 18, 2001 would be set off from severance pay under the plan, the language of the SPD is arguably less clear. Again, the SPD states:

Should the termination of your employment be deemed to be covered by the WARN Act, the severance benefits above shall be considered to be payments required by that Act. Accordingly, any payments under this Plan shall be reduced dollar-for-dollar by payments required pursuant to the WARN Act, and all other benefits otherwise provided by this Plan will be offset by benefits required pursuant to the WARN Act.

Murray Decl., Ex. 3 at 5. Although it is plain that under the SPD, "payments under this Plan shall be reduced dollar-for-dollar by payments required pursuant to the WARN Act," the SPD does not plainly explain what constitute "payments required pursuant to the WARN Act." This question is the heart of the present dispute.

Plaintiffs assert that interpretation of the phrase "payments required pursuant to the WARN Act" requires the court to look to Act itself. Opp'n at 4. Specifically, plaintiffs argue that the only instance in which a party is required to make payment under the statute is when an employer has violated the Act's notice provision and is liable to its former employees for back pay. *See* 29 U.S.C. § 2104(a)(1)(A) (requiring remedial back pay); Opp'n at 4. Therefore, plaintiffs contend, the SPD only permits LSI to offset severance pay by back pay it is forced to pay for violating the WARN Act. Although plaintiffs' strict interpretation of the SPD may follow literally, it does not follow logically.

Were the court to interpret the SPD as plaintiffs suggest, the Plan terms would actually give LSI an incentive *not to comply* with the provisions of the WARN Act. Indeed, by plaintiffs' rationale, while LSI may not set off the wages it paid plaintiffs while in compliance with the WARN Act, had LSI instead *violated* the WARN Act—and thereby incurred liability for back

pay—it could realize savings under the Plan by not paying duplicate benefits. Simply put, plaintiffs' interpretation does not make sense. Further, plaintiffs' interpretation does not appear to capture LSI's intent when drafting the plan. To be sure, if LSI intended the offset provision to have plaintiffs' meaning, one must necessarily wonder why LSI did not simply terminate plaintiffs' employment without notice and in violation of the WARN Act.

Moreover, the SPD does attempt to define payments required pursuant to the WARN Act. The SPD does state that "[s]hould the termination of your employment be deemed to be covered by the WARN Act, the severance benefits above shall be considered to be payments required by that Act." Murray Decl., Ex. 3 at 5. The statement "severance benefits above" refers to, *inter alia,* the weeks of base salary available as severance pay. *See id.* at 3. While the regular pay and benefits that plaintiffs received between September 19 and November 18 were, of course, not actually "severance benefits" paid from the Plan, the court concludes that the plan administrator did not abuse its discretion by interpreting "payments required by th[e WARN] Act" to include those wages.

When viewed in its entirety, the plan reflects an intention on LSI's part to offset severance pay by wages paid during the sixty day notice period. As demonstrated by the Plan's introductory paragraph, the drafters of the Plan were plainly aware of

the WARN Act and sought to comply with its provisions. *See id.* at 1 ("The Plan is also intended to satisfy, where applicable, the obligations of the Company under the Federal Worker and Retraining Notification ('WARN Act')."). It is also plain that the Plan intended to reduce employees' severance benefits "dollar-for-dollar" against certain moneys the employer would pay in order to comply with the WARN Act. In view of the Plan's expressed intent to comply with the Act, and for the reasons discussed above, it does not follow that the only payments which would reduce severance benefits are those LSI would pay for violating the Act. The only other reasonable interpretation[5] of this provision is that severance pay shall be reduced by the wages LSI pays during the sixty day notice period.[6] Thus, since the plan administrator reasonably interpreted the SPD to require reduction of plaintiffs' severance pay by the amount of wages they received between September 19, 2001 and November 18, 2001,[7] defendants are not liable under 29 U.S.C. § 1132(a)(1)(B). Defendants' motion for summary judgment with respect to plaintiffs' ERISA claim is granted.

### III. ORDER

For the foregoing reasons, the court grants defendants' motion for summary judgment.

---

5. Indeed, at oral argument, plaintiffs' counsel conceded that apart from his statutorily based interpretation, he could conceive of no other reasonable interpretation for the disputed language.

6. While not proffered by the parties, the court notes that sixty days continued payment of wages is implicitly "required pursuant to the WARN Act." The practical effect of the Act's notice period is to prohibit an employer from

terminating employment during the notice period. Thus, the Act actually does "require" continued payment of wages. This conclusion is also consistent with the liability the Act imposes on employers who prematurely terminate the employment of affected employees: back pay.

7. The court notes that, for the reasons discussed above, it would reach the same interpretation of the SPD under *de novo* review.