**Vicki D. BENSON, Plaintiff,**

v.

**LONG TERM DISABILITY INCOME PLAN FOR THE EMPLOYEES OF XEROX, Patricia M. Nazemeth, Acting for Xerox Corporation, and Health International, Defendants.**

**No. CV–98–6328LGB (RCX).**

United States District Court, C.D. California.

Sept. 16, 1999.

Howard Bennett Hellen, Howard B. Hellen Law Offices, San Diego, CA, for Vicki D. Benson.

Kirsten Hicks Spira, J. Patrick Jacobs, McNamara & Spira, Santa Monica, CA, Richard J. Pautler, Thompson Coburn, St. Louis, MO, for Long–Term Disability Income Plan for Employees of Xerox Corp.

Kirsten Hicks Spira, McNamara & Spira, Santa Monica, CA, Dinah McKean, Walsh & Furcolo, San Diego, CA, for Health International.

Michael P. McNamara, Kirsten Hicks Spira, J. Patrick Jacobs, McNamara & Spira, Santa Monica, CA, Richard J. Pautler, Thompson Coburn, St. Louis, MO, for Xerox Corp. Long Term Disability Plan, Xerox Corp., Patricia M. Nazemetz.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BAIRD, District Judge.

### I. INTRODUCTION

This case arises out of the alleged wrongful termination of Long Term Disability (LTD) benefits by plaintiff's employer Xerox, the Long–Term Disability Income Plan for the Employees of Xerox, and Health International (HI). Plaintiff also alleges that she was wrongfully terminated in retaliation of her making an ERISA based LTD benefit claim, and appealing the same.

### II. FACTUAL AND PROCEDURAL BACKGROUND

#### A. PLAINTIFF'S RECEIPT OF DISABILITY BENEFITS

Unless stated otherwise, the following facts are undisputed: Plaintiff was an employee of Xerox. *See* Pl.'s Statement of Genuine Issues at 2 (Pl.'s Statement). In 1997, Xerox offered two types of disability benefits—short-term disability benefits, and long-term disability benefits. *See id.* The plan became effective for eligible and qualified Xerox employees on August 1, 1996. *See id.* Under the LTD plan, disability is defined as follows:

> For employees who become disabled on or after August 1, 1996, (i) months one (1) through seven (7), following the expiration of the short-term disability period—the inability to perform, with or without reasonable accommodation, one or more of the essential duties of one's occupation or a comparable alternative offered by the Company or another employer because of Personal impairment caused by injury or illness, occupational or non-occupational; (ii) months eight (8) through twenty-four (24)—the inability to be employed in any substantial and gainful work either inside or outside of Xerox because of personal impairment caused by injury or illness, occupational or non-occupational.

*Id.* at 2–3.

In January 1997, plaintiff applied for and received short term disability benefits from January 29, 1997 through June 29, 1997. *See id.* at 5–6. After plaintiff exhausted her short term disability benefits, she applied for benefits under the LTD plan. *See id.* at 6. HI authorized LTD benefits to plaintiff beginning June 29, 1997. *See id.* In July 1997, HI determined that plaintiff no longer qualified for benefits under the LTD plan and terminated her benefits as of July 18, 1997. *See id.* HI's denial was based on the conclusion, by an independent third party board specialist, Harvey Wieseltier, M.D., that plaintiff's medical condition did not satisfy the definition of disability, and that she was able to perform her usual and customary duties. *See id.* at 6–7.

On August 5, 1997, plaintiff appealed HI's decision denying any further LTD benefits, and the denial was upheld by HI on August 21, 1997. *See id.* at 7. The decision to uphold the denial was based on

a review by a third party independent board specialist who, after review of the Administrative Record, concurred with the evaluation of Doctor Wieseltier. *See id.* at 7–8.

Because it was determined that plaintiff was not totally disabled, as defined under the Plan, and therefore able to perform her duties at Xerox, Xerox Human Resources Manager Susan Johnson sent plaintiff a memorandum indicating that she was to return to work on September 15. *See id.* at 8. Plaintiff did not return to work on that date, or any time thereafter. *See id.*[1] Because plaintiff failed to return to work, she was notified by a letter dated September 22, 1997 that effective September 22, 1997, she was being "voluntarily terminated" for absence without notice pursuant to Xerox's employment policy. *See id.* at 9. Xerox's Policy No. 404.1, Section 6, indicates that "[e]mployees who are absent for four consecutive days without notice to their supervisor, and satisfactory explanation, will be considered voluntary resignations." *See id.*

## B. PLAN ADMINISTRATION

Under the plan, the Plan Administrator has discretion to determine eligibility for LTD benefits. *See id.* at 3. The Plan Administrator under the Plan was Patricia Nazemeth. *See* Nazemeth Decl.; Xerox Corp. LTD Income Plan, Nazemeth Decl. Ex. A, Sec. 7.1 at 15 (Xerox LTD Plan) ("The plan shall be administered by a Plan Administrator who shall be Patricia Nazemeth"). The LTD plan allowed the Plan Administrator to delegate her discretion to determine eligibility for LTD benefits. *See* Xerox LTD Plan, Sec. 7.1 at 15 ("The Plan Administrator may delegate any of her administrative duties under the Plan and may delegate any of her discretionary authority to construe the terms of the Plan and determine eligibility for benefits.").

Pursuant to such authority, Xerox's Plan Administrator delegated her responsibility to determine medical eligibility for LTD benefits to Health International, Inc. *See* Nazemeth Decl., at 2.[2] As part of that delegation, and as provided under the contract between Xerox and HI, HI has the discretion, as Medical Case Manager and claims fiduciary under the LTD plan, for making determinations regarding eligibility for disability in connection with denials and final decisions on appeal. *See* Pl.'s

---

1. Plaintiff argues that this fact is disputed and cited to her complaint and exhibit L attached thereto, her declaration and the exhibits referenced thereto, and the declaration of her attorney and the exhibits referenced thereto. *See* Pl.'s Statement at 8–9. However, plaintiff's evidence, even if admissible for purposes of this motion for summary judgment, only highlights her belief that she had given a "satisfactory explanation" for her absence, not the fact that she did not return to work.

2. Plaintiff contends that this fact is disputed. However, plaintiff's evidence on that point is inadequate. She cites back to her complaint, the exhibit attached thereto, and to the declaration of her attorney, and exhibits attached thereto. First, the allegations in the complaint are not evidence, and cannot defeat a summary judgment motion. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ("Rule 56(e) permits a summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves ...."). Second, the exhibit to her complaint is the Xerox LTD Plan itself which can be considered by this Court because it is part of the Administrative Record. However, the sections cited to (section 7.1 and 7.10) do not contradict the fact that the Plan Administrator has *actually* delegated her authority. Section 7.1 gives the Plan Administrator the authority to delegate, and section 7.10 provides for indemnification and reimbursement to the Plan Administrator for all costs and expenses relating to the rendition of services. Third, the "evidence" cited to in her attorney's declaration (Hellen Decl.), and the exhibit attached thereto, does not make that fact in dispute. The relevant portion of the Hellen Declaration is nothing more than an unsubstantiated conclusory allegations unsupported by factual data. *See Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989). Finally, the exhibits cited to are the Xerox LTD Plan and the "Agreement to Provide," which is the contract between Xerox and HI outlining HI's responsibilities as Case Manager and claims fiduciary. Both of these documents directly contradict plaintiff's contention.

Statement at 4. HI also has the discretionary authority to determine the length of time for which the disability is certified and to construe the terms of the plan. *See id.* at 5. The agreement provides that all HI decisions on appealed claims regarding medical eligibility for disability benefits are final and binding. *See id.*

If HI determines that disability benefits are to be paid, Xerox pays the LTD benefits from its own assets, not HI's. *See id.* Additionally, HI's compensation is not dependent upon whether it approves or disapproves a claim. *See id.* at 4–5. Furthermore, in administering its duties as Case Manager and claims fiduciary, HI acts as an independent company which administers disability plans for various organizations, including Xerox. *See id.* at 4.[3]

### C. PROCEDURAL BACKGROUND

Plaintiff filed her complaint on August 4, 1998. The original complaint named the Long–Term Disability Income Plan for the Employees of Xerox Corporation; Patricia Nazemeth, acting for Xerox Corporation; ITT–Comprehensive Employee Benefit Service Co., a subsidiary of Hartford Life & Accident Insurance Company; Prudential Disability Management Services; and Health International as defendants. All the named parties answered the complaint. On April 23, 1999, a stipulation was entered thereby dismissing with prejudice defendants ITT–Comprehensive Employee Benefit Service Co. On September 1, 1999, another stipulation was entered into thereby dismissing with prejudice defendant Prudential.

The trial order set a July 31, 1999 discovery cut-off for all non-expert related discovery. The parties sought to extend all the pending hearing and cut-off dates for 90 days. That request was denied by the Court on August 2, 1999 because the parties failed to show "good cause."

On August 23, 1999, defendants Xerox Corporation Long–Term Disability Income Plan for the Employees of Xerox Corporation; Xerox Corporation; and Health International moved for summary judgment. The opposition was filed by plaintiff on August 30, 1999. The reply followed on September 3, 1999. Also on September 3, 1999, defendants filed objections to the evidence filed in support of plaintiff's opposition to their motion for summary judgment.[4]

### IV. STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of

---

**3.** Plaintiff argues that this fact is also in dispute. Plaintiff cites to her complaint, exhibit A attached thereto (the Xerox LTD Plan at section 7.01 and 7.10), and the declaration of her attorney (Hellen Decl.) and the exhibits referenced therein (the Xerox LTD Plan and the Agreement to Provide). For the same reasons stated in footnote 2, that argument is not supported by the evidence referred to. Those two documents clearly designate HI as an independent company. *See* Agreement to Provide at 1 ("HI provides professional medi-

cal evaluation of disability durations on a prospective and concurrent basis ... and other health care and disability management consultative services to insurance companies, third party administrators, employers, and other entities.").

**4.** On August 30, 1999, plaintiff filed a cross-motion for summary judgment, which defendants opposed. For the reasons stated below, that motion is moot.

material fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the moving party has the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact would find other than for the moving party. Conversely, on an issue for which the nonmoving party has the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

Where the operative facts are substantially undisputed, and the heart of the controversy is the legal effect of such facts, such a dispute effectively becomes a question of law that can, quite properly, be decided on summary judgment. *See Odle v. Heckler,* 707 F.2d 439, 440 (1983). However, summary judgment should not be granted where contradictory inferences may be drawn from undisputed facts. *See Braxton–Secret v. A.H. Robins Co.,* 769 F.2d 528, 531 (1985). In such a case, the non-moving party must show that the inferences it suggests are reasonable in light of the competing inferences. *See Matsushita Elec. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Here, plaintiff claims that "[e]ven taking the evidence as it now stands" there remains disputed issues of material facts, and therefore, summary judgment is inappropriate. *See* Pl.'s Mem. P. & A. op. at 12:7–8.[5] Plaintiff errs.

## V. APPLICATION TO THIS CASE

### A. DENIAL OF BENEFITS

#### 1. Standard of Review

"The beneficiary of an ERISA plan may bring a civil action against a plan adminis-

trator 'to recover benefits due to [her] under the terms of [her] plan, or to clarify [her] rights to future benefits under the terms of the plan.' " *See Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1471 (9th Cir.1993) (quoting 29 U.S.C. § 1132(a)(1)(B)). As such, the court must review the decision made by the administrator. The first question then becomes: which standard is the district court to use? The answer to that question raises the first dispute between the parties.

■ A denial of benefits challenged under 29 U.S.C. § 1132(a) is reviewed de novo, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," in which case an abuse of discretion standard is applied. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Plaintiff does not challenge that the plan in question gives the Plan Administrator discretion to determine eligibility for benefits. *See* Pl.'s Statement at 3. Therefore, it is clear that the "abuse of discretion" standard applies to this Court's review of the administrative record. However, plaintiff argues that this Court should use "heightened scrutiny" because the Plan Administrator, who is a fiduciary, is in a direct conflict of interest by virtue of its economic interest in the benefit decision which it makes.

In order decide whether to apply the less deferential standard, the Court must first determine "whether the affected beneficiary [plaintiff here] has provided material, probative evidence, beyond the mere

---

5. Plaintiff asserts that even though discovery closed on July 31, 1999, discovery is not complete. *See* Pl.'s Mem. P. & A. Op. at 12:8. When a party opposing a motion for summary judgment cannot present "facts essential to justify [her] opposition" to the motion, Fed. R. Civ. P. 56(f) allows the party to submit an affidavit stating such reasons. *See Program Eng'g, Inc. v. Triangle Publications, Inc.,* 634 F.2d 1188, 1193 (9th Cir.1980). The oppos-

ing party then has the burden to show what facts she hopes to discover to raise an issue of material facts. *See Taylor v. Sentry Life Ins. Co.,* 729 F.2d 652, 656 (9th Cir.1984) (per curiam). The Court may then order a continuance to permit additional discovery. *See Program Eng'g,* 634 F.2d at 1193. Plaintiff has not filed such an affidavit, and certainly does not present any reason as to why she is unable to oppose the motion at this point.

fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligation to the beneficiary." *Atwood v. Newmont,* 45 F.3d 1317, 1323 (9th Cir.1995). If not, the court engages in its traditional abuse of discretion review. *See id.* If the plaintiff does make the required showing, the court must apply the principles of trust law, which require the court to act "very skeptically" in deferring to the discretion of the administrator who seems to have committed a breach of fiduciary duty. *See id.*

■ To support her argument that such a breach of fiduciary duty exists here, plaintiff states that "it is undisputed that XEROX is both the self-insurer and the administrator/fiduciary making decisions as to whether to pay said claims." *See* Pl.'s Mem. P. & A. Op. at 22. Not only is plaintiff's blanket statement not supported by any evidence, but it is in direct contravention to the undisputed facts recited above.[6] The named Plan Administrator (Patricia Nazemeth) had delegated "the responsibilities to determine medical eligibility for long term disability benefits to Health International, Inc." Nazemeth Decl. at 2. As such, HI was the Case Manager and the claim fiduciary, and for all intensive purposes, had all the responsibilities of administrating the plan. For example, HI had the discretion to make determinations regarding eligibility for disability benefits, HI had the discretionary authority to determine the length of time for which those benefits were certified, and HI had the discretionary authori-

ty to interpret the terms of the plan. *See* Pl.'s Statement at 4–5. Furthermore, Xerox is the entity that pays all the LTD benefits, and HI's compensation from Xerox is not dependent upon whether HI approves or disapproves a claim. *See id.* Therefore, the decision maker—namely, HI—did not have a conflict of interest by virtue of its economic stake in the benefit decision which it makes because, as the evidence shows, it has no such economic stake. Therefore, plaintiff did not meet her burden, and as such, this Court applies the traditional "abuse of discretion" standard of review to HI's decision to terminate plaintiff's benefits.

## 2. HI's Decision to Terminate the Benefits

■ It is an abuse of discretion for an ERISA plan administrator to make a decision without any explanation, in a way that clearly conflicts with the plain language of the plan, or that is based on clearly erroneous findings of facts. *See Taft v. Equitable Life Assurance Soc'y,* 9 F.3d 1469, 1472–73 (9th Cir.1993). Plaintiff makes the full panoply of arguments under ERISA and claims that there remain genuine issues of material fact as to whether HI abused its discretion when it determined that plaintiff was not disabled because (1) it acted in clear contravention of the plain language of the plan, (2) made a decision without any explanation, and (3) based its decision on clearly erroneous facts.

---

**6.** Plaintiff argued at oral argument that defendant HI merely "recommended" benefit decisions, but did not definitively make them. Plaintiff contends that this shows that Xerox is the ultimate decision maker, which would place Xerox in a conflicted position. *See* HI000129. It is true that the language of document HI000129 states that the authorization of benefits from HI serves as a "recommendation" to Xerox. However, as argued by defense counsel at oral argument, that is because HI is not in a position to confirm that the employee for which it "authorized" benefit payments is still eligible to receive bene-

fits—i.e., the employee could have resigned, or may have become ineligible in some other way. Defense counsel pointed out, however, that the decision to terminate benefits was made in no uncertain terms by HI. *See* HI000130. This shows that HI acted independently from Xerox. Furthermore, as discussed in this section, plaintiff needs to show material, probative evidence, beyond the mere fact that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligation to the beneficiary. *Atwood v. Newmont,* 45 F.3d 1317, 1323 (9th Cir.1995).

### i. HI did not Act in Clear Contravention of the Plain Language of the Plan

Plaintiff claims that HI acted in contravention of the plain language of the plan by (1) allowing a medical determination as to her disability by a physician whose professional qualifications were not appropriate to the condition to be reviewed, (2) by not conducting a vocational analysis, (3) by improperly classifying her employee status, and (4) by deciding that she was not disabled in contravention of the meaning of that term as defined in the LTD plan.

### A. The use of an Orthopaedic Surgeon to Conduct the Independent Medical Evaluation

In determining whether the decision to have plaintiff examined by an orthopaedic surgeon was in clear violation of the plain language of the plan, the Court must first determine what the plain language of the plan requires. Plaintiff relies on Section 2 of the "Agreement to Provide," which is the agreement between Xerox and HI that outlines HI's responsibilities as Case Manager and claims fiduciary. *See* Agreement to Provide. Section 2 of that agreement provides that "[a]ll HI determinations that an employee's absence from work is not medically necessary or appropriate shall be made only by a physician whose professional qualifications are appropriate to *the condition to be reviewed.*" *Id.* at 5 (emphasis added).

■ The first hurdle that plaintiff must surmount is the fact that the Agreement to Provide is not the LTD Plan. As such, any action in contravention to the Agreement to Provide is not an action in contravention of the LTD Plan. Furthermore, the Court is unable to find a similar provision in the LTD Plan. Therefore, the choice of an orthopaedic surgeon was not in clear contravention to the plan's plain language as a matter of law.

The second hurdle that plaintiff must surmount is that even if the Agreement to Provide was considered part of the plan, she must show that the choice of an orthopaedic surgeon was in *clear* contravention of that agreement.[7] *See Hancock v. Montgomery Ward Long Term Disability Trust,* 787 F.2d 1302, 1307 (9th Cir.1986). The first step in making that determination is to determine what the "condition to be reviewed" was.

Plaintiff applied for disability benefits in January of 1997. *See* Complaint, at 15:13–15. At least on two occasions, in 1991 and in 1995, plaintiff had MRIs taken of her spine. *See* Admin. R. at HI000061 (1991), HI000062 (1995). Eventually, on April 3, 1997, doctors performed two anterior cervical microscopic diskectomies on C5–6, C6–7; two arthrodesis (fusion) at C5 and C6–7; and an anterior spinal instrumentation, at C5 through C7, utilizing the Orion spinal instrumentation on plaintiff. *See* Admin. R. at HI000071.

■ Furthermore, the diagnosis under which plaintiff was receiving her benefits—both short-term and long-term—was "cervical disk displacement," as indicated in every statement of authorization sent to her by HI. *See id.* at HI000118–HI000129. Plaintiff never contested, or sought to correct, this description. These treatments and diagnoses certainly warrant the use of an orthopaedic surgeon.

Plaintiff now argues that fibromyalgia (FM) was the cause of her disability. Therefore, plaintiff claims that she should

---

7. Plaintiff argued at the hearing that the issue was not so much whether it was an abuse of discretion to have an orthopaedic surgeon conduct the evaluation, but rather that it was not "reasonable" for Doctor Wieseltier to not consider FM as a disabling disease. First, the Court is unaware of any legal authority which imposes a standard of "reasonableness" on the administrator of an ERISA plan, or on the consulting physician. Furthermore, the record shows that Doctor Wieseltier *did* consider her complaints of FM, as evidence by (1) the medical reports he reviewed (items 3 and 5 at HI000104–05), and (2) his own comments relating her adult illnesses ("She states that in 1991 she was diagnosed with fibromyalgia").

have been examined by a rheumatologist, and that the failure to do so constitutes a violation of the plain language of the plan.[8] Out of the only two reports which could conclusively support a finding that FM was a cause of her disability one also concurs with prior diagnosis that plaintiff had cervical disk degeneration, *see* Admin. R. at HI000083 (Dr. Fingal's report), and the other states that plaintiff remains temporarily disabled due to her anterior cervical diskectomy with iliac crest allograft fusion and anterior spinal instrumentation for treatment of cervical disc disease, *see* Admin. R. at HI000074 (Dr. Doty). As such, neither one of these reports conclusively state that FM is the single cause, or even the dominant cause, of her disability. *See id.* at HI000074, HI000083. Additionally, neither Doctor Doty nor Doctor Fingal are rheumatologists. Finally, both of these reports were drafted after plaintiff's initial interview with the orthopaedic surgeon who conducted the independent medical evaluation (Dr. Wieseltier), and were therefore not part of his record.[9] Furthermore, the use of an orthopaedic surgeon to conduct the final review on plaintiff's appeal of Doctor Wieseltier's report was also not in clear contravention of the plan. As stated above, the administrative record was replete with reports diagnosing plaintiff's neck injury as her disability.

In conclusion, after carefully considering the entire Administrative Record, this Court finds that the use of an orthopaedic surgeon to conduct the independent medical evaluation was not in clear contravention of the LTD Plan, whether or not the Plan included the provisions of the Agreement to Provide. As such, based on the undisputed facts, the use of the orthopaedic surgeon, who ultimately concluded that plaintiff was not disabled, was not an abuse of discretion as a matter of law.

## B. The Lack of a Vocational analysis, and the Improper Classification of Plaintiff's Employee Status

The next two contentions are interrelated, and will therefore be analyzed together. Plaintiff next contends that defendants did not conduct any vocational review of plaintiff's job requirements and improperly classified her employee status, and as such violated the terms of the plan. Plaintiff fails to provide any support for the proposition that defendants are required to conduct vocational analysis, or classify plaintiff's employee status at all. The Court has reviewed both the LTD Plan and the Agreement to Provide at great length and is unable to find such requirement.

Furthermore, there is evidence in the administrative record that plaintiff's job requirements were taken into consideration by the doctor who conducted the independent medical evaluation. Doctor Wieseltier describes plaintiff's general job duties as

> includ[ing] computer work, desk work, sitting in meetings and in classrooms. In a work day, she would sit seven hours, stand one hour and walk one hour. She describes constant reaching below shoulder level, performing fine hand manipulation; frequent lifting up to ten pounds and performing simple grasping; occasional lifting up between 11 and 50 lbs., reaching above shoulder level and at shoulder level.

Admin. R. at HI000101 (Dr. Wieseltier's report). Taking these duties into consideration, he restricted her activities so as to avoid heavy lifting, prolonged or repetitious neck flexion, extension or rotation, and repetitive work above the head. *See id.* at HI000108. Furthermore, he recommended an ergonomic work station with appropriate adjustments to her work sta-

---

8. It is interesting to note that plaintiff never consulted a rheumatologist herself.

9. The independent medical evaluation was conducted on June 30, 1997. Doctor Doty wrote his report on July 11, 1997 and Doctor Fingal wrote her report on August 1, 1997.

tion as recommended by an occupational therapist. *See id.* He also recommended the use of a headset, anti-inflammatory medication, and possibly physical therapy. *See id.* The record also shows that HI communicated the restrictions imposed by Dr. Wieseltier to plaintiff's manager. *See* HI000023. Plaintiff's manager, in turn, told HI that plaintiff could work within those parameters. *See id.* This provides ample evidence that her job requirements were taken into consideration by the consulting physician, and it is certainly sufficient to survive an abuse of discretion standard of review.

As to the vocational review of plaintiff's work requirement, The Ninth Circuit has held that a Plan was not required to collect vocational evidence "where the evidence in the administrative record supports the conclusion that the claimant does not have an impairment which would prevent [her] from performing some identifiable job." *McKenzie v. General Tel. Co.,* 41 F.3d 1310, 1317 (9th Cir.1994). The evidence here provides such support and sufficiency under the abuse of discretion standard.

**C. Defendants Did not Abuse their Discretion by Deciding that Plaintiff Was not Disabled in Contravention of the Meaning of that Term as Defined in the LTD Plan**

██ The plan provides that disability shall be defined as follow:

For employees who become disabled on or after August 1, 1996, (i) months one (1) through seven (7), following the expiration of the short-term disability period—the inability to perform, with or without reasonable accommodation, one or more of the essential duties of one's occupation or a comparable alternative offered by the Company or another employer because of personal impairment caused by injury or illness, occupational or non-occupational; (ii) months eight (8) through twenty-four (24)—the inability to be employed in any substantial and gainful work either inside or outside

of Xerox because of personal impairment caused by injury or illness, occupational or non-occupational.

Xerox LTD Plan at 2. The mere fact that defendants' decision is contrary to some evidence in the record does not support a finding that defendant clearly violated the plain language of the plan. *See generally Snow v. Standard Ins. Co.,* 87 F.3d 327 (9th Cir.1996). Furthermore, the administrative record supports Doctor Wieseltier's conclusion that plaintiff did not meet the definition of "disabled" for purposes of LTD benefits. Therefore, as a matter of law, HI did not act in direct contravention of the plan when it decided that plaintiff was no longer disabled.

**ii. Defendants Did not Make a Decision Without any Explanation**

██ Plaintiff next claims that defendant made the decision to terminate her benefits without any explanation, and as such abused their discretion. To support her assertion, she points to the letters of denial dated July 21, 1997 and August 21, 1997. *See* Pl.'s Mem. P. & A. Op. Exs. C & E. The letters state that the reason for denial is that the "[c]onsulting physician did not concur." *See id.* Although the report of Doctor Wieseltier may not have been sent to her at the same time as the original denial letter, she received it shortly thereafter. This is evidenced by her appeal to HI, whereby she attempts to discredit the entirety of his report. *See* Admin. R. at HI000076–82 (stating "I will address discrepancies in his report as follows"). Clearly, plaintiff was provided with a detailed explanation for the denial of her benefits. Therefore, as a matter of law, this Court finds no abuse of discretion here.

**iii. Defendants Did not Base their Decision on Clearly Erroneous Facts**

██ Plaintiff claims that her disability (FM) was certified by more than one physician, and therefore, the determination

that she was not disabled is clearly erroneous.[10] In the ERISA context, even decisions directly contrary to evidence in the record do not necessarily amount to an abuse of discretion. *See Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir.1991) (no abuse of discretion to deny benefits despite expert evidence showing that a certain procedure was a diagnostic and therefore not covered by the plan); *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279,1285 (9th Cir.1990) (not arbitrary and capricious to deny benefits without considering a finding by the social security board that the plaintiff was totally disabled). In order to find an abuse of discretion, the decision of the administrator must be "so patently arbitrary and unreasonable as to lack foundation in factual basis." *Oster v. Barco of Cal. Employees' Retirement Plan*, 869 F.2d 1215, 1218 (9th Cir.1988).[11]

Clearly, the MRIs, the surgery, the operative report, the post-operative reports, the report from doctor Wieseltier, and all the other information contained in the administrative record, all support a determination that plaintiff is not disabled for purposed of the LTD benefits under the Plan. Therefore, as a matter of law, HI did not abuse its discretion.

## B. DEFENDANTS DID NOT VIOLATE SECTION 510 OF ERISA

Section 510 of ERISA provides that:

It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which [she] is entitled under the provision of an employee benefit plan ... or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan ....

29 U.S.C. § 1140. The courts have interpreted section 510 to prohibit an employer from taking an adverse action against an employee because the employee has exercised a right under the provisions of an employee benefit plan. *See Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 880 (9th Cir.1989). To establish a claim under section 510 of ERISA, a plan participant must establish a *prima facie* case of a violation under section 510. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 457–58 (9th Cir. 1995). As such, plaintiff must establish that her employment was terminated "because of a specific intent to interfere with ERISA rights." *See Dytrt v. Mountain State Tel. & Tel. Co.*, 921 F.2d 889, 896 (9th Cir.1990). No action lies, however, where the alleged loss of rights is merely a consequence of the termination, as opposed to the motivating factor. *See id.* Section 510 also protects illegal retaliation. Similarly, illegal retaliation occurs when "(1) an employee participates in a statutorily protected activity, (2) an adverse employment action is taken against him or her, and (3) a causal connection existed between the two." *Kimbro*, 889 F.2d at 881 (citation omitted).

Once a plaintiff makes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. *See Ritter*, 58 F.3d at 457. Then, in order to prevail, the plaintiff must

---

10. Plaintiff attempts to provide extrinsic evidence to show that the defendants' decision was clearly erroneous. *See* Kozin, Terman, Fair, & Wallace Decls. The Ninth Circuit has held that "[p]ermitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it." *Taft v. Equitable Life Assurance Society*, 9 F.3d 1469, 1472 (9th Cir. 1993). Furthermore, plaintiff is not arguing that the administrator refused to consider evidence available at the time of the decision. Therefore, this Court will not consider the extrinsic evidence before it.

11. This inquiry is used for abuse of discretion review in other contexts, and has specifically been adopted for use in the ERISA arena. *See Taft v. Equitable Life Assurance Society, 9 F.3d 1469, 1473 (9th Cir.1993).*

demonstrate that the employer's proffered reason for the adverse employment decision was a pretext for another motive which is discriminatory. *See id.*

 Plaintiff claims that Xerox terminated her in order to avoid paying for future LTD benefits, or in retaliation for her exercising of her LTD benefits. *See* Complaint at 24:4–10. In this case, plaintiff has not made a *prima facie* case of discriminatory intent at all nor has she shown that she engaged in an activity protected by statute. As such plaintiff has provided no evidence that Xerox intended to discriminate against her, or retaliated against her, for her exercise of ERISA rights when they terminated her employment. For that reason alone, defendants are entitled to summary judgment. *See Ritter v. Hughes Aircraft Co.*, 58 F.3d 454 (9th Cir.1995).

 Furthermore, even if plaintiff had made a case for a specific discriminatory intent, defendants have presented evidence to support a non-discriminatory purpose. It is undisputed that Xerox Human Resource Manager Susan Johnson sent plaintiff a Memorandum dated September 11, 1997 indicating that her return to work date was September 15, 1997. *See* Pl.'s Statement at 8. It is also undisputed that plaintiff never returned to work. Because plaintiff never returned to work, she was notified by a letter dated September 22, 1997 that effective September 22, 1997, she was being voluntarily terminated for absence without notice *pursuant to Xerox's employment policy. See id.* at 9. It is also undisputed that Policy No. 404.1, section 6 from Xerox's Human Resource Manual provides that "[e]mployees who are absent for four consecutive days without notice to their supervisor, *and* satisfactory explanation, will be considered voluntary resignations." *See id.* (emphasis added). The policy itself is evidence of a non-discriminatory reason.

Plaintiff argues that Xerox's reason is a pretext because she gave notice to her supervisor. What plaintiff fails to grasp is that the notice requirement also requires her to give a satisfactory explanation. HI had determined that plaintiff was no longer entitled to benefits, and plaintiff had exhausted her administrative appellate remedies. To allow a person a section 510 remedy when her disability claim has been fully adjudicated and that person refuses to go to work would fly in the face of ERISA's purpose and intent. As such, her explanation was unsatisfactory, and defendants are entitled to a judgment as a matter of law.

## VI. CONCLUSION

For the foregoing reasons, this Court finds that there are no genuine issues of material facts as to whether HI has abused its discretion in denying plaintiff's LTD benefits. As such, the Court GRANTS defendants' motion for summary judgment as to that cause of action. Furthermore, the Court also finds that there are no genuine issues of material facts as to whether defendants discriminated or retaliated against plaintiff in violation of section 510 of ERISA. Consequently, the Court also GRANTS defendants' motion for summary judgment as to that cause of action.

Additionally, plaintiff's August 30, 1999 cross-motion for summary judgment is MOOT, and the hearing set for September 23, 1999 is hereby VACATED.

IT IS SO ORDERED.