**Eugene EHRENSAFT, Plaintiff**

v.

**DIMENSION WORKS INCORPORATED LONG TERM DISABILITY PLAN, Defendant.**

No. CV–S–98–1712–RLH.

United States District Court, D. Nevada.

Oct. 20, 2000.

Richard H. Rosenthal, Carmel Valley, CA, Lynde Selden, Selden Law Firm, Las Vegas, NV, for Eugene Ehrensaft, Plaintiffs.

James Pico, Pico & Mitchell Ltd., Las Vegas, NV, for Dimension Works, Inc., Defendant.

## ORDER, JUDGMENT AND OPINION

(Motion for Summary Judgment—#40)

(Motion for Summary Judgment—#51)

HUNT, District Judge.

This matter arises out of a denial of long term disability benefits pursuant to a group insurance policy governed by the Employee Retirement Income Security Act of 1974 (hereafter ERISA) 29 U.S.C. § 1001 et seq. as amended.

It comes before the Court on two opposing motions for summary judgment. **Plaintiff's Motion for Summary Judgment** (# 40), was filed December 9, 1999, together with Plaintiff's Separate Statement of Undisputed Material Facts (# 41), Plaintiff's Memorandum of Points and Authorities (# 42), Declaration of Eugene Ehrensaft (# 43), Declaration of Lynde Selden II (Plaintiff's counsel) (# 44), a videotape (# 45), Affidavit of Dr. Karen L. Cruey, M.D. (# 46), Affidavit of Dr. Stephen V. Sobel, M.D. (# 47), Affidavit of Dr. Franklin Kozin, M.D. (# 48), and, Excerpts from Defendant's Claims File (# 49).

Defendant's Opposition (# 60) was filed January 10, 2000. Plaintiff filed his Reply (# 63) on January 24, 2000, and a Sealed Exhibit (# 64), which purports to go with document # 44, on January 19, 2000.

Also presented is **Defendant's Motion for Summary Judgment** (# 51) and Defendant's Exhibit "B" (# 52), filed separately, both filed December 10, 1999. Plaintiff's Opposition (# 57), together with the Declaration of Lynde Selden II(# 58) and the Declaration of Eugene Ehrensaft (# 59), were filed January 10, 2000. Defendant's Reply (# 65) was filed January 25, 2000.

### FACTS

Dimension Works, Inc., Plaintiff's prior employer, was issued a group long term disability (LTD) insurance policy (policy number 613356) by Standard Insurance Company (Standard), on November 15, 1992. Under the terms of the policy, Standard is also the administrator of the Plan. Plaintiff Ehrensaft was employed by Dimension Works, Inc. as a Controller. Asserting he was permanently disabled, Plaintiff quit his employment on December 31, 1994, and on or about January 9, 1995, submitted a claim for long term disability benefits, stating an inability to work due to a chronic back condition. Standard approved, and paid to Plaintiff, benefits until February 10, 1998, when it determined that he was capable of performing the sedentary work it found was the nature of his "occupation." Plaintiff appealed or challenged the decision and further doctors' reports were obtained by both Plaintiff and the Plan (Standard).

Standard's determination came after it had had Plaintiff submit to several independent medical examinations (IMEs) (Drs. Rimoldi and Kanter), and had received information from a third IME (Dr.

Gettleman) and videotapes of a sub rosa investigation conducted by another insurance company. Standard Insurance Company had also submitted the reports and file to its own reviewing physician (Dr. Fancher) and, ultimately, to its independent review officer (Linda Wheeler). The claims record also includes the records of the doctor (Dr. Gonzalez) who has treated the Plaintiff since an automobile accident, which incurred in 1982, and reports of doctors who examined Plaintiff before his benefits were terminated and during the period following (including Drs. Fojtik, Ghanayem, Eilers, Goldstein, and Thompson), when Plaintiff contested Defendant's decision. The Defendant ultimately upheld its decision and this lawsuit ensued. Plaintiff has obtained reports from additional doctors and healthcare providers, subsequent thereto, which were not considered by the Defendant and are not part of the claims record. The use of those records is a hotly disputed issue in this case and will be primarily dealt with in another order, although further reference will be made herein to the law which addresses this issue.

### STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Pursuant to the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *Securities and Exchange Comm'n v. Seaboard Corp.*, 677 F.2d 1289, 1293 (9th Cir. 1982) (citations omitted).

The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view all facts and inferences drawn in the light most favorable to the responding party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) (footnote omitted). *See also, Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (citation omitted), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once this burden has been met, "[t]he opposing party must then present specific facts demonstrating that there is a factual dispute about a material issue." *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir.1982) (citation and internal quotes omitted).

The foregoing is a brief description of the standard used in addressing motions for summary judgment. However, the decisions dealing with the review of ERISA claims suggest a modification of the ordinary standards for considering motions for summary judgment dealing with such claims.

### STANDARD OF REVIEW APPLICABLE IN THIS CASE

In a decision by the Ninth Circuit, dealing not only with an ERISA claim, but also dealing with the precise language, policy and issuing company (Standard) present in this case, the Circuit Court made the following declaration regarding summary judgment motions in these cases:

> Where the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material facts exists, do not apply.

*Bendixen v. Standard Insurance Company*, 185 F.3d 939, 942 (9th Cir.1999).

In this case, we not only have a motion for summary judgment, we have opposing motions for summary judgment wherein both parties claimed there were no material issues of fact. Plaintiff has now recant-

ed that position, in his opposition to the Defendant's motion for summary judgment, now claiming that there are material issues of fact to be decided. However, Plaintiff cannot have it both ways and the Court will accept the first representation, primarily because the Circuit Court, in the quote above, explained that in these cases, "the usual tests of summary judgment, such as whether a genuine dispute of material facts exists, do not apply."

■■■ This is not the usual ERISA case. The standard for review differs depending upon the extent of authority or discretion given to the ERISA plan administrator. The seminal case, cited here for authority by both sides, is *Firestone Tire and Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), which held that "[A] denial of benefits challenged under § 1132(a)(1)(b) [ERISA] must be reviewed under a de novo standard **unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate.**" *Id.* at 115, 109 S.Ct. 948 (emphasis added). Where there is such discretionary authority provided, the standard of review is "abuse of discretion." *Id.* Where the administrator of the plan is operating under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Id.*

Contrary to the arguments of Plaintiff in this case, the *Firestone Tire* decision holds that the standard of review (be it de novo or abuse of discretion) is not affected by the existence of a possible or actual conflict of interest. That is merely a factor to consider, using whatever standard is required. *Id.*

■■■ The *Bendixen* Court suggests that what is required, when an apparent con-

flict of interest is established, is "heightened scrutiny" of the denial of benefits. *Bendixen,* 185 F.3d at 943, 944. A "heightened scrutiny" of the abuse of discretion is not tantamount to de novo review, as Plaintiff repeatedly argues.

. . . .

■■■ The "abuse of discretion" standard of review has been repeatedly upheld where an ERISA or similar plan provides the administrator with discretionary authority to determine eligibility for benefits or to interpret the benefit plan. *Jones v. Laborers Health & Welfare Trust Fund,* 906 F.2d 480, 481 (9th Cir.1990) (trust fund with discretionary authority to interpret benefit plan subject to "abuse of discretion" standard); *Taft v. Equitable Life Assurance Society,* 9 F.3d 1469, 1471 (9th Cir.1993) (ERISA plan which vests administrator with discretionary authority to determine eligibility for benefits only reviewed for "abuse of discretion"[1]); *McKenzie v. General Telephone Company of California,* 41 F.3d 1310, 1314 (9th Cir. 1994) (when plan fiduciary has discretionary authority, "arbitrary and capricious" or "abuse of discretion" is proper standard of review).

The issue, of whether the administrator of the plan before the Court in this case had such discretionary authority, is easily resolved. In *Bendixen v. Standard Insurance Company, supra,* the Circuit Court was not only addressing the very same insurance company which issued the policy here, it dealt with the identical authorizing language. At page 943, FN 1, the *Bendixen* Court quotes the precise language found in the policy presented here, which is found on page 13 of the policy and states:

### ALLOCATION OF AUTHORITY

Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive

---

1. In Footnote 2, the Court in *Taft* noted that the terms, "arbitrary and capricious," and "abuse of discretion," are "distinctions without a difference."

authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

Our authority includes, but is not limited to:

1. The right to resolve all matters when a review has been requested.

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it.

3. The right to determine:

   a. Your eligibility for insurance;

   b. Your entitlement to benefits;

   c. The amount of benefits payable to you;

   d. The sufficiency and the amount of information we may reasonably require to determine a., b., or c.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

Referring to that language, the *Bendixen* Court held that, "In this case, the policy language clearly confers discretion on Standard to decide whether a claimant is disabled. Therefore, the standard is abuse of discretion." (*Bendixen,* 185 F.3d at 943 (emphasis added)).

## DISCUSSION

The essential issues presented to the Court are discussed below. The Court will refrain from attempting to distinguish or compare every case cited or detail every argument made. It will attempt to confine itself to the substantive issues presented and the applicable law and finding by this Court. Plaintiff's argument essentially is that Defendant's conflict of interest caused it to act contrary to the Plan in its interpretation of the policy, its method of conducting its examination and review of the claim, and its interpretation of the law, in the six areas discussed below. Defendant asserts that it acted in good faith and in a reasonable manner in the way it interpreted the policy, investigated and reviewed Plaintiff's claim, and interpreted the applicable law. The essential questions to be determined are questions of law and the law's application to this claim in determining whether Defendant abused its discretion either in the manner in which it investigated and reviewed the claim, or in reaching the determination it did about Plaintiff's disability status.

## I. "OWN OCCUPATION"

■ The policy language provides that a person is disabled if "unable to perform with reasonable continuity the material duties of [his] own occupation." Plaintiff is apparently a CPA who worked as a Controller for his former employer. In determining the duties of a "Controller," Standard used, and directed the doctors performing the IMEs to use, the description of the occupation of a Controller from the U.S. Department of Labor Dictionary of Occupational Titles, Fourth Edition[2], which was revised in 1991. Plaintiff con-

2. The definition is as follows:

**CONTROLLER (profess. & kin.) alternative titles: comptroller**
Directs financial activities of organization or subdivision of organization; Prepares, using computer or calculator, or directs preparation of, reports which summarize and forecast company business activity and financial position in areas of income, expenses, and earnings, based on past, present, and expected operations. Directs determination of depreciation rates to apply to capital assets. Establishes, or recommends to management, major economic objectives and policies for company or subdivision. May manage accounting department. May direct preparation of budgets May prepare reports required by regulatory agencies. May advise management on desirable operational adjustments due to tax code revisions. May arrange for audits of company accounts. May advise management about property and liability insurance coverage needed. May direct financial planning, procurement, and investment of funds for organization.

tends that Standard's use of that description violates the language of the policy and the law, arguing that Standard is required to use the specific requirements of his "job" rather than his "occupation" as defined generally.

This Court finds that the term, "occupation," is a general description, not a specific one. An insurer cannot be expected to anticipate every assignment an employer might place upon an employee outside the usual requirements of his or her occupation. A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her "occupation." For example, a secretary is not disabled from his or her "occupation" just because he or she cannot also perform additional tasks assigned by an employer, such as moving furniture or lifting heavy objects.

Plaintiff contends that his particular employer required him not only to do the duties usually associated with being a Controller, but also to lift reams of paper, computer printouts and computer equipment. His back condition precludes him from doing those particular chores. Accordingly, he argues, if he cannot do his specific job, he is disabled. Notwithstanding his claim that cited cases support his interpretation of the term, that is not the law.

The policy language clearly uses the word, "occupation." Occupation is a general term. The policy does not require disability from a particular job's or employer's requirements. In *Bendixen,* the Court held that Bendixen was not disabled if she could still work in her "own occupation" with "another employer." 185 F.3d at 944. Other cases have held likewise. *See Shapiro v. Berkshire,* 1999 WL 566372 (S.D.N.Y.1999) (the test was whether the claimant could "perform the services that are ordinarily associated with being a dentist"); *Ceasar v. Hartford Life,* 947 F.Supp. 204 (D.C.S.C.1996) (plaintiff's own occupation was broader than his job-which required rotating shifts); *Harbron v.*

*Standard Ins. Co.,* 1999 WL 436586 (N.D.Ill, 6/18/99) ("plaintiff must be unable to perform his own occupation for any employer, not just his current employer"); *Taylor–Benson v. Standard,* CV–S99–8524, C.D. CA, 12/1/1999 ("The relevant question is not whether plaintiff could perform the specific requirements of her job, but whether she could perform the requirements of her occupation generally.").

. . . .

To accept Plaintiff's argument that total disability means that a person cannot physically do some specifically assigned task, would permit employers and employees to arrange for some physically impossible task which the employee is unable to perform and then, based upon that inability, declare the employee totally disabled. Such an interpretation would be entirely unreasonable. The Court finds that the application of the term, "own occupation," should be done generally, *i.e.,* that the evaluation of disability should be made in light of the usual duties of that occupation and not depend on *ad hoc* peculiarities of a specific job or the requirements of a particular employer who may require activities beyond that generally contemplated by the "occupation." Accordingly, Standard, in its administration of this Plan did not abuse its discretion in applying that definition of "own occupation."

## II. FAILURE TO CONDUCT PSYCHOLOGICAL TESTING

■ Plaintiff argues that because several of the doctors who performed IMEs suggested psychological testing or examination, that it was unreasonable for the Defendant to make its determination without such testing. The argument has no merit. The doctors made it clear that such testing would not change their opinion that the Plaintiff was physically capable of performing the sedentary tasks of a Controller.

The doctors who conducted the independent medical examinations concluded,

**1260**

based upon their examinations, and the conduct of the Plaintiff, that he was exaggerating his physical condition and limitations, and they questioned his motive, suggesting that he was making approximately the same on disability as he would if he were having to work. They suggested that his psychological motivation be tested to see if he had some motivation other than his actual physical condition for making the claims about his abilities or lack thereof. The suggestion was based upon their determination that the physical examination (including diagnostic reports from others) did not substantiate his reported physical limitations.

Furthermore, Plaintiff has never made a claim that he was mentally (or even emotionally) disabled. Any suggestion by health care providers who examined the Plaintiff in the recent past, that he is depressed because his claim was denied, is not admissible as coming after the fact and being outside the claims records, and, furthermore, is a result of the denial of his claim, not the result of his physical limitations. This argument is a red herring. Failure to pursue irrelevant examinations is not an abuse of discretion.

## III. USE OF ORTHOPEDIC EXPERTS *VERSUS* PAIN MANAGEMENT EXPERTS

Plaintiff challenges the reasonableness of the Defendants use of orthopedic specialists to conduct the IMEs, claiming that Standard should have used doctors who specialize in pain management. This claim is also a red herring. The purported injuries, the purported physical condition of the Plaintiff, arises from back injuries suffered many years ago in an automobile accident. Such injuries are clearly within the province of orthopedic specialists. There is no evidence that pain management specialists have any more expertise than orthopedic specialists in determining the nature and extent of, or the limitations required by, injuries to the back, the skeletal foundation of the body. There is

clearly no abuse of discretion in selecting orthopedic specialists to conduct the independent examinations.

## IV. WAS RELIANCE ON INDEPENDENT MEDICAL EXAMINATIONS UNREASONABLE?

The Plaintiff's treating physicians declared him disabled. The doctors who performed independent examinations determined that he was exaggerating his limitations and that his physical condition was such that he could perform the sedentary duties of a Controller or CPA. Following the first IME, and before a report was even forthcoming, the Plaintiff complained that he thought the doctor was "biased." The Standard had its own physician review the report and he determined there was no evidence of bias, but recommended another IME by another doctor, which was done. The doctors who performed the IMEs were secured through the services of, and the referral by, an independent organization. In addition, Standard was provided with the record of an IME conducted on the Plaintiff by another insurance carrier, together with sub rosa surveillance tapes of the Plaintiff's activities, which the doctors who performed the IMEs found confirmed their opinions. Additionally, the reports of the treating physicians were available to and reviewed by the doctors conducting the independent examinations.

It is not the duty of this Court to determine which doctors have the most credible opinions. The standard is abuse of discretion. The issue is whether it is an abuse of discretion to rely on the reports and opinions of independent doctors over the Plaintiff's treating or examining physicians? Under the law it clearly is not. The fact that there are doctors' reports which conflict with the findings of the doctors' reports relied on by the administrator does not amount to an abuse of discretion. *Taft v. Equitable Life Assurance Society,* 9 F.3d at 1473. "[E]ven decisions directly contrary to evidence in the record do not

necessarily amount to an abuse of discretion." *Id.* There was no abuse of discretion to deny benefits despite a previous finding of disability by the social security board. *Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 991 F.2d 356, 358–59 (7th Cir.1993). The administrator "did not abuse its discretion merely because there was evidence before it that would have supported an opposite decision." *Bolling v. Eli Lilly & Co.*, 990 F.2d 1028, 1029–30 (8th Cir.1993). It is not an abuse of discretion to deny benefits despite a report by one doctor concluding that a plaintiff was totally disabled. *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 380 (10th Cir.1992).

The policy specifically gave Standard the authority to determine entitlement to benefits. The role of this Court is not to usurp that authority or function, but to ensure that such authority was not abused.

## V. ADDITIONAL EVIDENCE

After Plaintiff had made his claim and began receiving benefits under the Plan, and prior to coming to its decision to terminate the benefits, which was made on February 10, 1998, Standard began its inquiry and examination of the file and initiated the independent medical examinations spoken of. Following the February 10, 1998, decision, the Plaintiff contested and appealed Standards findings and obtained further reports from both his treating doctor and well as additional tests and reports from additional health care providers. This documentation was submitted to Standard and reviewed by it and its independent doctors, as well as by its staff doctor. The file was then referred to Standard's Quality Assurance Unit for review by a Ms. Linda Wheeler. The appeal was denied October 9, 1998. Subsequent thereto, during the two years since, the Plaintiff has sought additional medical examinations and opinions and now wishes them to be considered. Although certain circumstances provide for consideration of evidence outside the claims record, unfortunately this is not one of them.

■ In making a determination of whether an administrator's findings are "clearly erroneous" (*i.e.*, an abuse of discretion) the court reviews only the evidence presented to the trustees. *Hicks v. Pacific Maritime Ass'n*, 567 F.2d 355, 358 (9th Cir.1978). *Jones v. Laborers Health & Welfare Trust Fund*, 906 F.2d at 482. The district court is limited to the record that was before the plan administrator and cannot consider a report that was not before the administrator at the time of the denial. *Bendixen*, 185 F.3d at 944 (citing *Taft v. Equitable Life Assur. Soc'y*, 9 F.3d 1469, 1471 (9th Cir.1993)). In *Taft*, the Circuit Court reversed the district court's decision because it found that the district court had erred "by examining evidence that was not part of Equitable's administrative record...." *Taft*, 9 F.3d at 1470 and 1471. The *Taft* Court explained as follows:

Permitting a district court to examine evidence outside the administrative record would open the door to the anomalous conclusion that a plan administrator abused its discretion by failing to consider evidence not before it. Moreover, such expanded review would impede an important purpose of the federal statute under which district courts have jurisdiction to review these administrative decisions:

A primary goal of ERISA was to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously....

*Sandoval v. Aetna Life & Casualty Ins. Co.* 967 F.2d 377, 380 (10th Cir.1992) *Id.* at 1472.

"As in *Taft*, we hold that the district court may not consider 'new evidence,' *i.e.*, evidence which was not part of the administrative record. Under the abuse of discretion standard, the district court may review only evidence which was presented

to the plan trustees or administrator." *McKenzie,* 41 F.3d at 1316.

There is a limited exception to the foregoing rule, found in *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 944 (9th Cir.1995), where the Court found that new evidence may be considered under certain circumstances when the standard of review is de novo, and the new evidence is necessary to conduct an adequate de novo review of the benefit decision. This exception does not apply here. This case does not require de novo review, thus the new evidence is not required to make such a review adequate. However, even in *Mongeluzo,* the Court said, "We emphasize that a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator." *Id.*

## VI. CONFLICT OF INTEREST

The Plaintiff argues that because Standard is both the insurer under the plan, and the administrator of the plan, there exists a conflict of interest, which changes the standard of review from abuse of process to one of de novo review. As discussed above, such is not the law.

The *Firestone Tire* decision, cited by the Plaintiff as the basis for his argument, holds that the standard of review (be it de novo or abuse of discretion) is not affected by the existence of a possible or actual conflict of interest. That is merely a factor to consider using whatever standard is required. "Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" *Firestone Tire and Rubber Company,* 489 U.S. at 115, 109 S.Ct. 948.

■ The *Bendixen* Court suggests that what is required, when an apparent conflict of interest is established, is "heightened scrutiny" of the denial of benefits.

*Bendixen,* 185 F.3d at 943, 944. A "heightened scrutiny" of the abuse of discretion is not tantamount to de novo review, contrary to Plaintiff's argument. The Court in *Bendixen* stated, in relevant part, as follows:

> **This standard can be heightened, however, by the presence of a conflict of interest.** *Atwood v. Newmont Gold Co.,* 45 F.3d 1317, 1322 (9th Cir.1995); *see also Firestone,* 489 U.S. at 115, 109 S.Ct. 948 (holding **that conflict of interest "must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'"**) (citation omitted). "Nevertheless, the presence of conflict does not automatically remove the deference we ordinarily accord to ERISA administrators who are authorized by the plan to interpret a plan's provisions." *Lang v. Long–Term Disability Plan of Sponsor Applied Remote Tech., Inc.,* 125 F.3d 794, 797 (9th Cir.1997). We held at *Atwood* that **only a "serious conflict would heighten scrutiny."** *Atwood,* 45 F.3d at 1322–23. *See also Barnett v. Kaiser Found. Health Plan, Inc.,* 32 F.3d 413, 415–416 (9th Cir.1994) (holding that no heightened review applies in the absence of a "serious conflict"). \* \* \* In order to establish a serious conflict, the **beneficiary has the burden to come forward with "material, probative evidence, beyond the mere fact of the apparent conflict, tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."**

*Bendixen,* 185 F.3d at 943 (emphasis added). The Court went on to hold that the refusal to consider a report that was not brought before the plan administrator until after the second review and a final determination was made, was not the compelling evidence required.

Any arguments, that the six issues or situations discussed above constitute a showing of self-interest, are adequately discussed and rejected in the Court's dis-

cussion above. Plaintiff made an aborted effort to add an additional basis for claiming action reflecting conflict of interest when it attempted to submit an unsigned affidavit by a former employee of Plaintiff's employer (who had dealt with the securing of the plan coverage), to the effect that she did not remember or recall being told that the term, "own occupation" was meant generally rather than referring to the specific job. The affidavit, being unsigned, is in violation of the requirements of Rule 56(e), Fed.R.Civ.P., in that it is not an affidavit, being unsigned and unsworn, and it is purportedly made, not on personal knowledge, but on absence of memory. Furthermore, even if that evidence (if it can be called that) were admitted for consideration, it does not establish that Standard kept any information about its administration of the plan from Plaintiff or his employer. As explained above, the language of the policy, itself, refers to "occupation," a general term, not "job," a specific term.

In reviewing the claims file, it is apparent that Standard went to great lengths to be thorough in obtaining and reviewing all relevant information, and to provide the Plaintiff with the opportunity to present the supporting documents and information regarding his claim. The claims file consists of approximately 650 pages. There is no showing that its conduct, in administrating, evaluating or deciding the claim, was affected by conflict of interest.

"In order to constitute an abuse of discretion a[n] [administrator's] factual findings must be "clearly erroneous." (citation omitted). In making this determination we review only the evidence presented. (citation omitted)." *Jones*, 906 F.2d at 482.

The Defendant reviewed all the information in the file. It based its decision on two independent medical examinations involving physical examinations and review of records, plus a separate IME from another insurer, with a sub rosa tape showing the Plaintiff engaged in activities which were claimed beyond his abilities.

When Plaintiff objected to the first IME, another was scheduled with a different doctor. The Defendant's own physician reviewed the file, and Standard conducted a vocational analysis. All the foregoing concluded that the Plaintiff was capable of performing on a full time basis, notwithstanding opinion to the contrary by Plaintiff's treating physician. When Standard notified the Plaintiff of its decision, it invited him to provide any additional information he wished, to support his claim. He submitted additional documents and requested a review. An extensive review was performed and reaffirmed Standard's decision. The Plaintiff was given an extensive explanation of Standard's decision.

The Court has reviewed the claims file, in view of the law and the contentions of the parties and finds that Defendant did not abuse its discretion or act arbitrarily or unreasonably in its denial of Plaintiff's claim for Long Term Disability. Thus, it is entitled to summary judgment in its favor.

Accordingly, for the reasons stated herein, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion for Summary Judgment (# 40) is DENIED and Defendant's Motion for Summary Judgment (# 51) is GRANTED.